CASE 18.—ACTION BY T. H. PICKRELL AGAINST THE CITY
OF CARLISLE.—October 20, 1909.

## Pickrell v. City of Carlisle

Appeal from Nicholas Circuit Court.

L. P. FRYER, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Re-
versed.

1. Municipal Corporations—Streets—Obstructions.—Streets, in-
cluding the pavements of a town, belong to the municipality
for the use of the public traveling upon them for their
whole length and width.

2. Municipal Corporations—Obstructions of Streets—Nuisances
—Abatement.—Any permanent structure built upon any part
ot the public   streets which interferes   with their use
by the public may be abated by the municipality, or be
abated by the courts, at the instance of the town.

3. Municipal Corporations—Use of Streets—Rights of Abutting
Owners..—The public will not be heard in equity to complain
of an abutting owner's act in obstructing a street, which does
not unreasonably interfere with the public's use of a street
for travel.

4. Adverse Possession—Street—Right to Obstruct—Title by Pre-
scription.—A lot owner may acquire by prescription an
exclusive right to occupy a public street with his building or
partial obstruction.

5. Adverse   Possession—Obstructions   of  Streets—Nuisance—
A:batement.—Plaintiff erected in front of his house steps that
extended upon the sidewalk.   A former owner maintained an
obstruction of the same character at the same place for
more than 15 years prior to 1873. Others on the same block
and in other blocks, where the sidewalks were narrow, were
allowed to maintain other similar partial obstructions. Held,
that the steps were not a purpresture and a public nuisance,
which could be abated, the present owner having the right to
maintain them, having an easement to continue the obstruc-
tion maintained by the former owner, or one no more an

Pickrell v. City of Carlisle.

obstruction, and the fact that others maintained like obstructions was evidence that it was not unreasonable, but a common custom.

6. Words and Phrases—"Common."—What is "common" is generally known to all.

7. Municipal Corporations—Ordinances—Prohibiting Obstruction of Streets.—A town may prohibit the erection of steps extending upon the sidewalks by a general ordinance of uniform application.

SWINFORD & SWINFORD for appellant.

AUTHORITIES CITED.

Dillon on Mun. Corp. Vol. 2, Sec. 734. 888; Commonwealth, etc., v. First Nat'l Bank of West Newton, 56th Atl. Rep., 437; Livingston v. Wolf, 136 Pa., 519; Bosworth v. City of Mt. Sterling, 12th K. L. R., 157; Wolf v. District of Columbia, 69th L. R. A., 84; City of Georgetown .v. Hambrick, 31st. K. L. R., 1276; City of Mt. Carmel v. McClintock, 155 Ill., 608; Dudley v. Trustees of Frankfort, 12th B. Monroe, 617; Newcome v. Crews, 17th K. L. R., 900; City of Bowling Green v. Gaines. 29th Rep. 1013; Dudley v. Trustees of Frankfort, 12 B. Monroe. 616; Dillon on Mun. Corp. Vol. 1, Sec. 734, 4th Ed.; Dillon on Mun. Corp., Vol. 2, Sec. 734, 888; Commonwealth, by, etc., v. First Nat'l Bank of West Newton, 56th Atl. Rep. 437 and 438; Teager v. City of Flemingsburg, 109 Ky., 746; Bouvier, Vol. 2, 14th Ed., 245; Hundley v. Harrison. 123 Ala., 292; Commonwealth, by etc., v. Borough of Beaver, 33rd. Atl. Rep., page 112; Elliott on Roads and Streets, page 291; Fox v. Halcomb, 32nd Mich, 494; Kerr on Injunctions (Star P. 201); Dickerson v. Mayor of City of LeRoy, vol. 72, page 588, appellate Dec. of Ill.; City of Logansport v. Uhl, etc., 99 Ind., 539; L. & N. R. R. Co. v. Smith, 25th. K. L. R., 459.

HOLMES & ROSS, attorneys for appellees.

AUTHORITIES.

4 Metc. 110; Thompson on Nuisance, 619; Covington v. Hall, &c., 30 Rep. 358; City of Louisville v. Snow's Adm'r, 21 K. L. R. 1268; City of Paducah v. Johnson. 29 Rep. 535; Trustees of Hazlegreen v. McNabby. 23 L. R., 812; Bogard &c. v. O'Brien et al., 14 Ky., 649; Sec. 3637, Ky. Stat.; McQuillin on Municipal Ordinances, Sec. 460; McQuillin on Municipal Ordinances, Sec. 444; Hundley v. Harrison, 123 Ala., 292; Pennsylvania Co. v. City of Chicago, 54 N. E., 825; Hibbard et al. v. City of Chicago, 50 N. E. 256; Elliott on Roads and Streets, page 478; Snyder v. City of Mt. Pulaski, 52 N. E., 63; People v. Harris, 67 N. E., 785; Barker

Pickrell v. City of Carlisle.

v. Mayor &c.. of Macon, 39 Ga., 735; Shaw v. Kennedy, 1 N. C. Term Rep, 158; Harvey v. DeWoode, 18 Ark. 252; Hutton v. Camden, 39 N. J. L., 122; Kansas City v. McLear, 31 Mo. App., 433; VanWormer v. Albany, 15 Wend., 264; Lassing v. Americus, 86 Ga., 756; Denver v. Mullen, 7 Col. 345; Nazworthy v. Sullivan, 55 Ill. App., 48; Baumgartner v. Hasty, 100 Ind.. 575; Irvin v. Wood &c., 51 N. Y., 224, 10 Am. Rep., 603; Wood on Nuisances, Sec. 748; Wood on Nuisances, Sec. 749; Wood on Nuisances, Sec. 259; Joyce v. Woods, 78 Rep. 386; Varden v. Mount, 78 Ky. Rep., 92; Teager v. City of Flemingsburg, Dubois v. Kington, City of Covington v. Lee. 28 Rep. 492; City of Henderson v. Reed, etc., 23 Rep., 463; Fugate v. City of Somerset, 16 Rep., 808; House v. City of Covington, 26 Rep. 660; Thompson on Negligences, Sec. 6167, Vol. 5; Thompson on Negligences, Sec. 6170, Vol. 5; Thompson on Negligences, Sec. 6175, Vol. 5; City of Carlisle v. Secret, 25 Rep., 336; City of Louisville v. Brewer's Adm'r 24 L. Rep., 1671; Dillon on Municipal Corporations, 1007; White v. City of New berne, 59, S. E., 992; Curry v. Town of Mannington, 23 W. Va., 14; City of Denver v. Utzler. 38 Colo., 300; Dudley v. City of Flemingsburg, 115 Ky., 5; Faulkner v. City of Aurora, 85 Ind., 130; Callanan v. Gilman. 107 N. Y., 360; Gray v. Henry County, 19 Rep., 885; Hurst v. Cassiday &c., 5 Rep. 771; Churchill v. Commonwealth, 13 B. Mon., 333; Wood on Nuisances, 357; Jones on Easements, Sec. 855; Jones on Easements, Sec. 870; Palestine Bldg. Assoc. v. Minor &c., 27 Rep. 783; Elliott on Roads and Streets, Sec. 659; Daekalb v. Luney, 61 N. E., 1036; Ashbrook v. Commonwealth, 1 Bush 13, A.; Yates v. Town of Warrenton, 84 Va., 327; City of Lexington v. Auger, Jr., &c., 4 Rep. 24; City of Glascow v. Gillenwaters, 23 Rep., 1375; Commonwealth v. Findley, 15 Rep., 650; Modern Law Municipal Corporations, Sec. 1311; First National Bank v. Tyson, 133 Ala., 459; James Adm'r v. Trustees of Harrodsburg, 8 Rep., 899; State v. Goodwin, 145 N. C., 461; Stein v. Chesapeake & Ohio Railway Co., 116 S. W., 737.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

The town of Carlisle, county seat of Nicholas county, was laid out in 1816. A plot of the town was then recorded in the county clerk's office, showing location and width of streets. The town is now a city of the fifth class, with a population of less than 2,000. The part of the town occupied by business

houses is Main street.   The courthouse square fronts Main street on the south, and extends to Chestnut street on the north.   On the west is Locust street (originally named Main Cross street), and runs at right angles to Main and Chestnut.   That block of Locust street opposite the courthouse square is occupied by a bank, a clothing store, a lawyer's office, and the postoffice building on the south end of the block, while the north end is occupied by dwelling houses except at the corner of Chestnut, which is occupied by the Christian church building.   Locust street is 70 feet wide along this block, and is 60 feet wide throughout the remainder of its length.   All of Locust street north of the postoffice (except the Christian church) is fronted by residence property only. Nor are there any business houses north or northeast of the block named. Appellant owned a lot immediately south of the Christian church, fronting on Locust street.   He applied to the town council for, and was granted, a permit to build a dwelling house on his lot.   The surface of the ground on which Carlisle is situated is hilly.   Locust street and the block west of the courthouse square have a sharp slope to the south and west.   All the buildings on that block except the Christian church have a greater elevation of the foundations on their south side above the surface of the street, owing to that fact.   All the buildings on that block fronting Locust street are built on the line of the street, several of them being residences.   The most of them have steps and porches extending a foot or so, to three or four feet, out on the pavement.   The pavement along that block is 12 feet wide, and constructed of cement. Appellant's lot has a frontage on Locust street of 55 feet. When he

came to build his house, he excavated for his cellar and foundation, placing his building so that it would come up to the property line on the street. After his foundation was built, and when he began to build his steps, extending them out on the pavement for 3 1-2 feet, as was necessary to enable him to get into the house if it was built on the property line as it was begun, the town council ordered the steps removed, and, the marshal threatening to tear them down, appellant filed this suit for injunction against the town and its officers, restraining them from interfering with the plaintiff's steps. Pending the suit the building was finished at a cost of about $8,000 or $9,000. The circuit court adjudged that plaintiff was not entitled to the relief sought, dissolved the injunction, and ordered the steps removed. From that judgment this appeal is prosecuted.

In addition to the foregoing, the proof discloses the following facts: Many other buildings in the town on Main street and other streets had steps extending out on the pavements. On this lot where plaintiff erected his house there formerly stood an old stone building used as a store for many years. It had stood there longer than the memory of the oldest inhabitant. It was built on the property line also. There was a stone step 18 inches wide, 6 or 8 inches high, and 5 feet long in front of it and extending for its full length and width on the pavement. Just south of that step there was a cellar door in the pavement next to the building. It was a double wooden door, slanting from the pavement to the building, being some 2 1-2 feet higher at the building than at the pavement. On its south side it was much higher above the surface of the pavement than at its north side. The door extended out onto the pavement four

feet, and its width when open was eight feet.   The
steps now in question occupy part of the space form-
erly taken up by that cellar door, and partly by the
old step above referred to.   The old cellar door was
doubtless built when the stone house was.   At least
it was there when witnesses 55 to 75 years old, and
who had always lived in the town, first knew it.

Under these circumstances, were the plaintiff's
steps a purpresture, and a public nuisance, which the
town might abate or prevent, and which it ought to
prohibit.   It is old and familiar law that the streets,
including the pavements, of a town, belong to the mu-
nicipality for the use of the public traveling upon
them for their whole length and width; likewise, that
any permanent structure built upon any part of the
public streets so as to interfere with their use by the
public for travel may be per se a nuisance, and may
be abated by the municipality, or be abated by the
courts at the instance of the town.   But it is not true
that the municipality and the traveling public have
the right to the exclusive use of the public streets.
The owners of abutting lots have rights in the streets
in addition to those enjoyed by the general public,
and it may be in spite of their rights.   For example,
the abutting owner has a particular easement in the
street immediately fronting his lot, or leading to it,
of ingress and egress, to a not unreasonable extent,
although the exercise of his right might interfere
with the public use.   If it were not so, then towns
could not exist, for the title to the street would in ef-
fect, or could, absorb the value of the abutting lot as
a city lot.   This right of ingress and egress must be
exercised in a reasonable manner, so as to interfere
not excessively with the public right of travel. It will
vary according to the circumstances of the particular

case. The location of the lot, the purposes for which it may be used, and is used, the natural grade of the street and lot, or artificial grade of the street as made by the city, all are pertinent factors entering into the question. So will the number of the population of the town, and the extent, present and probable of the necessity for the public's use of the street for traveling purposes. The dominant idea of the common law is "reasonableness." Neither the city nor the abutting lot owner is allowed to act the dog in the manger—at least, will not be given the aid of a court of equity in so acting. It is therefore that a lot owner is confined to a reasonable use of his right of ingress, and egress, of ornamentation of his lot and the street in front of it (as by planting and maintaining shade trees, awnings, lamp posts, and the like), and the city and public will not be heard in equity to complain of the abutting owner's act which does not unreasonably interfere with the public's use of the street for travel.

The general rule is fairly summarized in the following paragraph from Dillon on Municipal Corporations (volume 2, Sec. 734) : "The owners of lots bordering upon streets or ways have or may have in other respects a right to make a reasonable and proper use of the street or way. What may be deemed such a use depends, in absence of legislative or authorized municipal declaration, much upon the local situation and public usage—that is, the use which others similarly situated made of their land—this being evidence of reasonable use. Conformably to these principles, it was held that common and well-established usage in the city of Boston justified the owner of the land in erecting thereon warehouses on the line of the streets or ways with doors or win-

dows opening onto the street or highway, and shutters projecting into the same when open, and with sidewalks in front, having on their surface iron gratings for admitting light to, and trapdoors for communicating with, the cellar or underground apartments of the warehouses and used for putting in or taking out goods. , So, for the same reasons, it is not an unreasonable use of the street in a populous place, where land is valuable, so to erect structures as that the grates and doors, when opened, swing over the line of the street. Whatever may be the rights of the public, certain it is that these acts do constitute a trespass upon the privy owner of the soil of the street."

The Supreme Court of Pennsylvania had our question before it in the Commonwealth v. First National Bank of West Newton, 207 Pa. 255, 56 Atl. 437. West Newton was a town about the size of Carlisle. The controversy was as to the right of a property holder to construct steps on the sidewalk of Main street, a street 42 feet wide, practically where other projections of like character had existed to a former building. The steps extended two feet nine inches on a sidewalk seven feet wide. The court observed:

"In the absence of municipal regulation, lot owners may for purposes of necessity, ornament, or convenience partially obstruct a highway in a reasonable manner, so as not to prevent the use of the highway by the public; and the municipal authorities may by ordinance or otherwise regulate the manner of this public use and the ornamentation. What is a reasonable exercise of this discretion depends on the cir cumstances."

The same court in Livingston v. Wolf, 136 Pa. 519, 20 Atl. 551, 20 Am. St. Rep. 936, said:

Pickrell v. City of Carlisle.

"The footways, no less than the carriageways, are under municipal control, and the authorities may determine the extent to which the walks and pavements may be obstructed by cellar doors, door steps, awnings, projecting windows, cornices, and the like. This power must be exercised by regulations that are general and uniform, that are reasonable and certain, and that are in conformity with the Constitution and laws."

In Georgetown v. Hambrick, 127 Ky. 43, 104 S. W. 997, 31 Ky. Law Rep. 1276, 13 L. R. A. (N. S.) 1113, this court declared that while a municipality has control of its streets and sidewalks, and may regulate the width of each, it must do so in a reasonable manner, and not arbitrarily; that the abutting lot owner has certain rights therein that must be respected, and can not be capriciously or unreasonably curtailed.

In Commonwealth v. Borough of Beaver, 171 Pa. 542, 33 Atl. 112, the Supreme Court of Pennsylvania said:

"The general proposition that the public have a right to travel on foot or in vehicles over every portion of the highway is modified largely by exceptions.

In Commonwealth (City of Allegheny) v. Zimmerman, 95 Pa. 292, 40 Am. Rep. 649, Mercur, J., in delivering the opinion of the court, says: 'So shade trees may stand between the sidewalk and the central part of the street without constituting a nuisance per se.' The mere partial obstruction of a street, when in fact such obstruction does not interfere with the public use, does not create a nuisance. * * * The right to partially obstruct a street does not appear to be limited to cases of necessity. It may extend to cases of convenience or ornament, provided it does not unnecessarily interfere with public travel."

Appellee relies on certain text-writers. Elliott on Roads; Thompson on Negligence; and Wood on Nuisances. These authors lay down the principle more broadly than the adjudged cases, so far as we have noticed or they have been cited to us. When courts charged with the responsibility of declaring governing principles and applying them in actual cases between litigants have spoken, a less strict rule has been observed. The cases recognize the fact, of which we are all cognizant, that in nearly every town, and particularly the old towns of the states which were early settled, the custom was to build houses fronting on the streets and abutting on the property line so as to make some part of the approach extend out on the pavement. This is perhaps more frequently so as to cellar doors and similar so-called obstructions. Most of the states hold to the doctrine that limitation does not run against the public, and that no length of time could ripen into a right what was originally a common nuisance. Notwithstanding, the weight of authority, and what seems to us to be the right of the matter, tends to support a milder doctrine than that the public authorities must at all hazards require removed, and that the lot owner must under pain of having his property demolished or materially impaired, remove those inoffensive obstructions which for generations and in a great number of instances have been suffered to exist upon some portion of the streets. All agree that the municipality may by general ordinance, or by a consistent course, regulate such obstructions even to prohibiting them entirely. But, unless it does so, where they are suffered in a number of instances, and where they do not appear to be an unreasonable use of the street, it is deemed, not that they are there as a matter of right, but that

their presence is usual and customary, and does not materially or unreasonably interfere with the public use.    Dillon on  Municipal Corporations (4th Ed.) Sec. 657.

Noticing some of the adjudged cases cited by ap· pellee, and which seems to be the most persuasive authority cited to sustain the judgment in this case, we find that the expressions most strongly supporting appellee's contention are dicta, or turn upon other facts not here present.    For example, People v. Harris, 203 Ill. 272, 67 N. E. 785, 96 Am. St. Rep. 304, was a mandamus to compel certain municipal officers to remove an obstruction consisting of a bay window. An ordinance of the city permitted lot owners to appropriate three feet of the pavement. It is not shown what the width of the street was, nor whether the encroachments were not unreasonable or usual in that city.    The question turned on the power of the council to enact such general ordinance.    It was held to be beyond  its power.    This  excerpt will show the thought of the court:

"If bay windows may be authorized to be extended into the street eighteen inches when near the ground, · then why not cities authorize property holders owning properties on each side of the street to cover the entire street, so long as they will place their projections and obstructions high enough that the tallest man in the community, or the highest wagon or the  biggest load that may be conceived of, may pass readily? It seems to us the very suggestion carries with it its own answer, and that there is no safe field of speculation other than to keep within  the  limits placed by the books, by saying that the streets in the entirety are public properties, exclusively for public use, and that

they, or any part of them, cannot be devoted exclusively to private purposes or private use.''

Yet the fact is that no city enforces the ironclad doctrine announced.  Cornices, awnings, shade trees, hitch posts, cellar openings, coal holes, gratings to protect windows, door sills or single steps, shutters, show windows a few inches wide, all structures of a permanent nature, and  tradesmen's  exhibitions of wares in boxes, barrels, or otherwise, temporary, but so constant, as to be practically permanent matters, are universally suffered, and are not found either dangerous or annoying to pedestrians.  The question always comes back to the point: Are they unreasonable and do they make the street unsafe for the public use? In Parker v. Mayor, 39 Ga. 725, 99 Am. Dec. 486, the city charter seems to have required the city authorities to keep the  streets  free  from  buildings, posts, steps, fences, or other obstructions or nuisances.  The court said: ''To this end it is the duty of the city authorities to  remove any  nuisance  from the streets or sidewalks, and anything that endangers the life of a person passing along the sidewalk is a nuisance which they are bound to abate.'' We are not prepared to criticise that statement.  Irvine v. Wood, 51 N. Y. 224, 10 Am. Rep. 603, was a case where a coal hole was excavated in the pavement, but left with a defective covering.  The landlord and tenant of the premises were sued.  The case opens with this statement: ''The defendants did not allege in their answer that the coal hole was constructed by any license from the proper city authorities.  *  *  *  It may then be treated as a nuisance, being an unauthorized excavation in the street.  *  *  *  Even if this hole was excavated on the street by permission of competent authority, the person who originally excavated it was

bound to do it in a careful manner, and to see that it was properly and carefully covered, so as not to be perilous to travelers  upon  the  street.'' The case turned entirely upon the fact that the hole was negligently maintained without suitable covering.    While v. City of New Berne, 146 N. C. 447, 59 S. E. 992, 13 L. R. A. (N. S.) 1166, 125 Am. St. Rep. 476, was an action against the city for personal injury inflicted on the plaintiff by his stumbling over steps projecting into the street.  The case was made to turn upon that fact, coupled with the further fact that the city had failed to maintain a light at or near that point to show the obstruction.   We apprehend it would have been equally liable had the plaintiff fallen over some unevenness in the street, which was structural and dangerous if not lighted.    Callahan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831, was a case where the defendant had by use of drays and other accessories in his business practically appropriated a street, excluding the public.  It was held that was an unreasable use, even though the magnitude and nature of the defendant's business seemed to  require  it.  Other cases for personal injury to the plaintiff's falling over obstructions in streets, such as steps and the like, lay down the general doctrine that the streets are primarily for the public use, and that any permanent appropriation by lot owners is a purpresture, and a nuisance, where it endangers the public safety. Appellee expresses the fear that such would be its predicament should some one stumble upon these steps, and sustain injury.   The question would be for the jury whether the presence of the steps was unsafe, and, in view of the lay of the ground, the width of the pavement at that point, and other steps similar in the same locality, made the street not reasonably safe for the travel

of pedestrians.  The jury might find it one way or the other.  So might that body find any other situation alleged as constituting a common or private nuisance. We must decide the fact as it appears to us, assuming that any other body who may come to view the question will be governed by the law and the facts. In this state the doctrine obtains that a lot owner may obtain by operation of the statutes  of  limitation an exclusive right to occupy a public street with his building or partial obstructions.  Bosworth v. City of Mt. Sterling, 13 S. W. 920, 12 Ky. Law Rep. 157.

The fact that more than 15 years prior to 1873 the owner of the lot had maintained an obstruction substantially at the same place, and not differing in character from that now sought to be removed, gave the present owner an easement to continue it, or another no more an obstruction.  And the fact that others in the same block, and in other blocks where the pavements were not so wide, were suffered, and had been for a great many years, to maintain similar partial obstructions, is evidence that such steps were not unreasonable, but were a common custom in that town. What is common is generally known by all, and would seem not to be an unreasonable course.  The town might have prohibited such steps by a general ordinance of uniform application.  As it has not done so, unless it shows that the particular obstruction complained of is in fact a nuisance, and is an unreasonable use of the public way under the conditions shown to exist there, appellant ought not to be singled out for discipline merely to vindicate a previously unused power.

The judgment will be reversed, and the cause remanded, with  directions to  grant the  injunction prayed for.