## City of Winchester v. VanMeter.

(Decided March 17, 1914.)

### Appeal from Clark Circuit Court.

1. Taxation—Residence—Definition of for Purposes of Taxation.— Where a person has two or more residences at which he spends portions of each year, that one of them which he regards as his permanent home, and to which when absent he intends to return, will be treated as his residence for purposes of taxation.

2. Taxation—Residence—Person Can Only Have One for Purposes of Taxation.—Where a person rents or owns and occupies at different times during the year different homes, only one of these can be regarded as his residence for purposes of taxation. Which one of them shall be so treated, he has the right to select or designate, and this selection will be adopted in determining his residence for purposes of taxation, unless the facts and circumstances are sufficient to overcome the expressed intention. In many cases the identity of the permanent home is to be fixed by

facts and circumstances, as the mere expression of an intention is not always controlling.

F. H. HAGGARD, J. SMITH HAYS and J. SMITH HAYS, JR., for appellant.

B. R. JOUETT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The only question in this case is, was the appellee, VanMeter, in April, 1912, a resident of the city of Winchester in the sense that his money, choses in action, and personal property were taxable in the city as of that date?

The lower court ruled that he was not, and the city appeals.

The evidence shows, without contradiction, that VanMeter, in April, 1912, and for many years prior thereto, owned and conducted a large farm in Clark county, a few miles distant from Winchester. His farm had never been leased or rented, but was managed and operated by servants and employes acting under the direct supervision of VanMeter. On this farm he maintained a furnished home, and this home was occupied by himself and family as a residence during several months each year.

For a few years prior to 1910 he had been in the habit of removing with his family, which consisted of his wife and some children of school age, to the city of Lexington, in the fall of the year and remaining there until spring or early summer, for the purpose of enabling his children to attend school in Lexington. When school closed he would return, in company with his family, to his farm. In the fall of 1910 he rented a furnished house in Winchester in which he and his family lived until the spring or summer of 1911, during which time his children attended school in Winchester. At the close of school he returned with his family to his farm and lived there until the fall of 1911, when he again desired to take his family to Winchester in order that his children might more conveniently attend school. Not being able at this time to rent a house in which to live during the school period, he purchased a house in Winchester and furnished it, and in this house he and his family lived from some time in the fall of 1911 until the beginning of summer or close of the school year in 1912, when they returned to his farm.

While he lived in Winchester, as well as in Lexington, it was his habit to go to the farm nearly every day for the purpose of superintending its management. He testifies that he never intended to take up his permanent residence in Winchester or to have a permanent residence at any other place than his farm, and that when he left the farm under the circumstances and for the reasons stated, it was always with the intention to return to it. It further appears that in these years all of his choses in action and personal property were listed for assessment in the district in which his farm was located, and in this precinct he always voted.

Under this state of facts we think all of the choses in action and personal property owned by VanMeter in April, 1912, had a situs for taxation at his home in the country. He was merely a temporary resident of Winchester. He had never abandoned his home in the country, and when temporarily absent always had in mind the intention to return and did return when the reasons or conditions that induced temporary absence had ended. Nor is there any ground to suspect that in claiming his country home as his permanent residence he was acting in bad faith or attempting to evade the rate of taxation in Winchester, which was higher than the rate of taxation in the country.

A man may rent or own and occupy at different times during the year and for a part of each year as many homes as he chooses to live in, but only one of these can be regarded as his residence for purposes of taxation, and generally that one will be treated as his permanent home to which, when absent, he intends to return. Which one of them shall be so treated, he has the right to select or designate, and this selection will be adopted in determining his residence for purposes of taxation unless the facts and circumstances are sufficient to overcome the expressed intention.

In many cases the identity of the permanent home is to be fixed by facts and circumstances, as a mere expression of intention is not always controlling, but when the expression of intention to select a permanent residence at a designated place harmonizes with the facts and circumstances that serve to illustrate the intention, as they do in this case, there is not much room for dispute as to the place of residence.

In Montgomery v. City of Lebanon, 111 Ky., 646, the question presented was whether the personalty of Montgomery had a taxable situs in Lebanon. The facts showed that Montgomery "had been for many years, a citizen of Marion county, residing and making his home upon his farm, owned by him, a few miles from Lebanon; that his farm and dwelling thereon constituted his home, and the proceeds of his cultivation and management of the farm were the source of his income from which he derives support for himself and family, and that he had no other business; that a short time since, desiring to have his children within convenient access to the schools in the city of Lebanon while they were of school age, he, with his family, removed many of his household effects to a house in the city of Lebanon, owned by plaintiff's wife, and his family now occupy said house. * * * That he was still devoting his attention to his farming and his dwelling thereon, which he has never abandoned as his permanent home, and which he keeps in condition ready at all times to receive his family when the purposes of their sojourn in Lebanon shall have been accomplished or when they desire to return; that his farm is his only home, his residence in Lebanon temporary; that he at all times continued to perform his duties as a citizen in the precinct in which his said home is situated; that he had not at any time sought or undertaken to exercise any of the privileges pertaining to citizens having their domicile in the city of Lebanon, and has never at any time claimed a home in said city. * * * His only business is farming. He cultivates his farm, or has it cultivated. Part of his household goods remain in his house on the farm. He retains the right to remove his family back to his house at any time, and he says he spends most of his time on the farm, and that he removed his family to Lebanon to stay only while his two children were in the school age, the youngest of whom was sixteen years old at the time of the trial. He says he never exercised any of the privileges of citizenship peculiar to the city; never registered there as a voter."

Under these facts, which are very similar to the ones disclosed by the record in the case we have, it was held that the personal estate of Montgomery was not taxable in Lebanon.

In City of Lebanon v. Biggers, 117 Ky., 430, under a state of facts quite different from those appearing

in the Montgomery case, the court said that Biggers had become a resident of Lebanon and therefore his personal estate was taxable there. But in the course of the opinion it was said:

"It is a maxim of the law that every person must have a domicile, and also that he can have but one, and that, when once established, it continues until he renounces it and takes up another in its stead. Nor can there be any question that a domicile is not lost by temporary absence. The question is one of fact, and it is often difficult to determine. The rule is laid down by Mr. Justice Cooley in volume one of his work on Taxation (3rd Ed.), page 641, quoting Shaw, C. J., as follows: 'No exact definition can be given of "domicile." It depends upon no one fact or combination of circumstances, but from the whole, taken together, it must be determined in each particular case. It is a maxim that every man must have a domicile somewhere and also that he can have but one. Of course, it follows that his existing domicile continues until he acquires another, and vice versa, by acquiring a new domicile he relinquishes his former one. From this view it is manifest that very slight circumstances must often decide the question. It depends upon the preponderance of evidence in favor of two or more places; and it may often occur that the evidence of facts tending to establish the domicile in one place would be entirely conclusive were it not for the existence of facts and circumstances of a still more conclusive and decisive character, which fixed it beyond question in another. So, on the contrary, very slight circumstances may fix one's domicile, if not controlled by more conclusive facts fixing it in another place.' "

A like conclusion was reached in Graves v. City of Georgetown, 154 Ky., 207. Another illustrative case is Helm v. Com., 135 Ky., 392.

We think this case is fully controlled by the opinion in the Montgomery case, and the judgment is affirmed.