## City of Covington v. Shinkle.

(Decided May 11, 1917.)

### Appeal from Kenton Circuit Court (Law and Equity Division).

1. Jury—Right to Trial by Jury.—The constitutional right to a jury trial exists only in cases where, by the common law, a jury trial was customarily had, and the constitutional right to a trial by jury means a trial according to the course of the common law.

2. Taxation—Proceeding to Assess Omitted Property—Jury.—A proceeding under section 3187 of the Kentucky Statutes to assess omitted personal property is a special proceeding provided by statute, and is not a trial according to the course of the common law, in which the parties are entitled to a jury trial.

3. Domicile—Domicile of Choice and Change of Domicile.—Where a man has three residences and spends a substantial portion of his time in each of them, he may establish his residence in either place; and, neither the fact that one of his dwelling houses is more comfortable or better furnished than the others, nor the fact that he spends the greater portion of his time there, will be conclusive on the question of domicile, where both intention and fact must concur.

STEPHENS L. BLAKELY, J. H. KLETTE and FREDERICK W. SCHMITZ for appellant.

S. D. ROUSE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Bradford Shinkle died in Covington, Ky., on May 6, 1909; and, on November 24, 1913, the city of Covington instituted this proceeding to collect from his estate taxes upon omitted personal property for the years 1909 to 1913, both inclusive.

The defense is that Bradford Shinkle resided in Kenton county outside of the city of Covington at the time of his death in 1909, and had so resided for many years previous thereto.

On July 14, 1914, the action was transferred to the ordinary docket, where a jury trial resulted in a verdict for the city. The verdict and judgment upon the first trial were, however, set aside as being against the weight of the evidence; and, upon the authority of Stearns Coal & Lumber Co. v. Commonwealth, 167 Ky. 51, decided November 24, 1915, the order granting a jury trial and transferring the case to the ordinary docket for that purpose, was set aside. By agreement, the case was then submitted to the chancellor upon the evidence which had been heard in the jury trial, and he entered a judgment dismissing the petition. The city of Covington appeals.

1. It is insisted that the circuit court erred in refusing the plaintiff a jury trial for the purpose of trying the question of the domicile of Bradford Shinkle; and, that this was a question of fact which, under the code, the plaintiff had the right to try by a jury. Appellant cites many authorities to the effect that the existence or the non-existence of a domicile in a given locality, where the facts are complicated, is a mixed question of law and fact; and, insofar as it involves questions of fact including the ascertainment of the intention of the party, it is solely within the province of the jury to determine that issue. 14 Cyc. 865. And, several opinions by this court have said, in substance, that the question of domicile was a question of fact to be tried by a jury. City of Lebanon v. Biggers, 117 Ky. 430; Graves' Admr. v. City of Georgetown, 154 Ky. 207.

We are of opinion, however, that this case is to be controlled by the later decision of this court in Stearns Coal & Lumber Co. v. Commonwealth, *supra,* where the question of the propriety of a jury trial in similar suits by the Commonwealth under section 4260 of the Kentucky Statutes, was carefully considered.

In that case the court said:

"The proceeding by revenue agents to cause property to be listed for taxation, which has been omitted by the owners, the assessors, or boards of supervisors, is a special proceeding provided for by article XIII. of Kentucky Statutes. It may, further, be said that in a proceeding of this character the judge of the county court does not act in a judicial capacity, but in a ministerial capacity, and as such, is only one of the agencies provided by law for assessing property for taxation. His judgment, however, is the judgment of a court and to the extent of determining whether property has been assessed

or omitted and its value, he acts judicially, and the same rule would apply to the circuit court upon an appeal from a judgment of the county court. Baldwin v. Shine, 84 Ky. 502; Baldwin v. Hewitt, 88 Ky. 673; Cassidy v. Young, 92 Ky. 227; Hoke v. Commonwealth, 79 Ky. 567; Commonwealth v. Ryan, 126 Ky. 649; Commonwealth, etc. v. Weissinger, 143 Ky. 368.''

And, after pointing out that section 4260 of the Kentucky Statutes provided the method of procedure in that case, and made no provision whatever for a jury trial, the court further said:

''There is no other authority for this character of proceeding except that contained in the statute, *supra*. Being a special proceeding provided for by statute, and defining the method of procedure and who shall have authority to make the assessment, it would seem that the proceeding would have to conform in all respects to the requirements of the statute. The statute provides that the court shall determine whether the property ought to be assessed and the value of the property which has been omitted from assessment and shall perform all other duties in connection with the proceeding.''

The law under which the appellant is proceeding here is section 3187 of the Kentucky Statutes—a part of the charter of cities of the second class. This statute is quite elaborate, and provides that where any property, subject to taxation, has been omitted from taxation for any year or years, the city may, by direct action brought in the name of the city, recover judgment against the person liable for the payment of taxes on such property; that the judgment will constitute a lien upon the property and the collection thereof may be enforced by sale of the property in the same manner as property is sold in satisfaction of liens created by contract, or the judgment may be collected by any means allowed by law for the collection of personal judgments; that defense may be made showing: (1) That the property is not subject to assessment and taxation for the year or years in question; (2) that the person sued is not the owner of the property or liable for the payment of the taxes thereon for such years; (3) that the taxes on such property have been paid; and that in all cases the court may hear evidence and determine the assessable value of the property as of the years in question. In their controlling features of procedure, sections 2460 and 3187 of the statutes are substantially the same.

We think there can be little doubt, in view of the opinion of this court in the case of Stearns Coal & Lumber Co. v. Commonwealth, *supra,* that section 3187, *supra,* creates a special proceeding for the assessment of omitted property and the collection of taxes thereon, and that the provision that the court may hear evidence and determine the assessable value of the property precludes the idea of a trial by a jury.

This conclusion is further fortified by this further excerpt from the opinion in the Stearns case:

"The provisions of the statute nowhere give room for the intervention of a jury or provide in any place that the questions in issue may be heard or tried by a jury. There are many reasons why the legislative authority imposed the duties required by this statute upon the judge of the court alone, but it is not necessary to enumerate them here. Suffice it to say that under the provisions of the statute no litigant is required in this character of proceeding to submit the issues of his case to the determination of a jury. This is not a case of equitable cognizance where the court has a right to call a jury to pass upon the questions of fact in an advisory character. To deny to a litigant in a case of this kind a trial by jury would not be an infringement of the ancient right of trial by jury. The constitutional right of a jury trial exists only in cases where, by the common law, a jury trial was customarily had and the constitutional right to a trial by jury means a trial according to the course of the common law. Carter v. Weisenburg, 95 Ky. 135; Comingor v. Louisville Trust Co., 128 Ky. 697; Rieger v. Schulte, et al., 135 Ky. 129. The authority for this proceeding being founded upon a recent statute, is, of course, a proceeding unknown to the common law."

This reasoning applies with equal force to the statute here under consideration.

Appellant insists, however, that sub-section (a) of section 3187, which provides that all tax bills remaining unpaid for thirty days shall be deemed a debt from such person to the city arising as by contract and may be enforced as such, puts claims of this character upon the footing of ordinary claims recoverable by a suit at law in which a jury trial may be had. It is clear, however, from the context, that the statute refers to ordinary delinquent tax bills which have been made in the usual way of assessment, and not to this proceeding for the assessment and taxation of omitted property.

We think it reasonably clear, therefore, that section 3187 never contemplated that the ownership of property and the value of property of a decedent's estate in cities of the second class should be determined by a jury for the purpose of taxation; on the contrary, it provides for a special proceeding in which those questions are to be determined by the court.

It follows, therefore, that the court did not err in refusing the appellant a jury trial.

2. It is insisted, however, that the finding of the circuit court that Bradford Shinkle lived in Kenton county and outside the limits of the city of Covington at the time of his death, should be reversed because it is not sustained by the evidence. Bradford Shinkle owned three residences at the time of his death: one at 165 East Second street in the city of Covington; another upon his farm located on the Lexington turnpike, about five miles from the city of Covington; and a third at Watch Hill, Rhode Island. He was a wealthy man and could easily afford to keep up the three establishments. The city house on East Second street had been built by Bradford Shinkle's father in about 1870; and, upon his death, in 1892 or 1893, the city house became the property of Bradford Shinkle's mother. He continued to live there with his mother and finally became the owner of it. He built the house on the Lexington turnpike some time between 1892 and 1896, more than twenty years ago. He would live in each of these houses during a portion of the year. In the early winter months Bradford Shinkle usually would live in the city house on East Second street. Later, he would go to Florida or California for the winter, and would return usually to the city house, and then go to his place on the Lexington turnpike early in May. Thence he would go to Watch Hill, Rhode Island, some time in July, and remain there until September. About the middle of September he would return from Watch Hill and would go to his country place on the Lexington turnpike, where he would remain until late in the fall, and would then go back to the city. This was his habit for many years before his death. The three houses were furnished, and each was occupied as his home during the time he remained there. Whenever he voted, he voted in the county; it is not shown that he ever voted in the city. The fact that he had his business office in one of his city buildings five or six miles from his country resi-

dence, signifies nothing in these days of rapid transit by automobiles and trolley lines.

In brief, the proof shows that Bradford Shinkle not only repeatedly declared his residence to be in the county, but that he made oath to that effect on several occasions. He never at any time asserted a residence at any other place, and, in his last will and testament he referred to his country house as his "home residence." The county taxing authorities recognized his legal residence as being in the country, and assessed his personal property as of that situs, and Mr. Shinkle for many years paid his personal tax on such assessments.

On the other hand, the only evidence indicating a contrary intention is a statement in several deeds executed by Mr. Shinkle, wherein he is described as "Bradford Shinkle, of Covington, Ky."

The rule of law applicable to cases of this character is well stated in Hurst v. Flemingsburg, 172 Ky. 129, as follows:

"Of course, a party cannot live altogether in one state and acquire a residence in another state by mere declaration of intention. The question of residence is one of fact and intention. Both must concur. But where a party has an actual residence in two different states and spends a substantial portion of his time in each, he may establish his residence in either state, and neither the fact that his dwelling house in the other state is more comfortable or better furnished, nor the fact that he spends the greater portion of his time there, will be conclusive on the question of residence. Here both the intention and fact concur. Just after he had given up his home in Fleming county plaintiff acquired the Ohio farm for purposes of a home. This is not all that he did. He established a residence on the farm. Each year he spent a portion of his time there, improving his farm and transacting the only business which he had. He exercised the privileges of a *bona fide* resident and citizen by participating in the elections held in the county where his farm was located. His intangible property was subject to taxation at the place of his legal residence. He paid the taxes on such property to the taxing authorities of Brown county, Ohio.

"Viewing the question in the light of plaintiff's declared intention and his subsequent conduct, we conclude that for the years in question he was an actual resident of the state of Ohio, notwithstanding the fact that he

occupied for the greater portion of that time a house in Flemingsburg that was better furnished and more comfortable than his Ohio residence. Montgomery v. City of Lebanon, 111 Ky. 664; City of Lancaster v. Pope, 156 Ky. 1; City of Winchester v. VanMeter, 158 Ky. 31, 164 S. W. 323; Baker v. Baker, Eccles & Co., 162 Ky. 683.''

Under this rule the proof sustains the finding of the chancellor, that the residence of Bradford Shinkle at the time of his death was at his country place in Kenton county.

The suggestion that Bradford Shinkle changed his residence from the city to the county for the purpose of avoiding the payment of city taxes upon his personalty is of no importance, since every man has the right to choose his residence. His purpose in fixing it is not subject to inquiry. The only question we have for determination is, where was his residence at the time of his death?

Judgment affirmed.