(No. 23933.—

THE JACKIE CAB COMPANY *et al.* Appellants, *vs.* THE CHICAGO PARK DISTRICT *et al.* Appellees.

*Opinion filed June 11, 1937.*

FARTHING, C.J., dissenting.

ELLIS & WESTBROOKS, (RICHARD E. WESTBROOKS, of counsel,) for appellants.

CHARLES CENTER CASE, (RICHARD H. DEVINE, of counsel,) for appellees.

Per CURIAM: Plaintiffs filed their complaint in the circuit court of Cook county charging that they were engaged in the business of operating taxicabs for hire in the city of Chicago and, particularly, over and along certain boulevards on the south side of the city which were under the direction and control of the Chicago Park District; that the drivers of plaintiffs' cabs are colored and the service caters particularly to the colored population located in that part of Chicago; that there is in effect a certain ordinance of the Chicago Park District, passed May 5, 1936, regulating taxicabs, section 12 of which provides that "No additional passenger or passengers shall be permitted to or allowed to become passengers upon any public passenger vehicle after it has started upon any trip, except at the request and direction of the person or persons first hiring the vehicle;" that this section of the ordinance is unconstitutional and void, and further, that the police department is discriminating against the colored taxicab operators and arresting them for picking up additional passengers without the consent of the person first hiring the vehicle, while the white taxicab operators are permitted to do this very thing. The bill prays a permanent injunction to restrain the police department from arresting plaintiffs' taxicab drivers. On motion of the defendants the complaint was dismissed. The

trial court certified that the validity of an ordinance was involved and that public interest required a direct appeal to this court.

The validity of section 7, which forbids any driver of a "public passenger vehicle," as defined in section 1 of the ordinance, to solicit passengers upon any boulevard, parkway or driveway under the jurisdiction of the Chicago Park District, was sustained in *Chicago Park District* v. *Lattipee,* 364 Ill. 182. Plaintiffs contend that section 12 contravenes section 2 of article 2 of the constitution of this State and the fourteenth amendment to the Federal constitution because it deprives them of the right to contract freely for services, and that the prohibition therein contained bears no reasonable relation to the public health, safety or welfare.

Section 7 of the act creating the Chicago Park District (State Bar Stat. 1935, p. 2375,) vested in its commissioners the power to establish, by ordinance, all needful rules and regulations for the government and protection of parks, boulevards and driveways, as well as the power to exclude all objectionable travel and traffic, to make and enforce reasonable traffic and other regulations, and to provide penalties for the violations of such rules and regulations. This park district is a municipality created by the statute and the powers granted to it are similar to those granted to cities and villages of the State. A taxicab is a common carrier which derives its income from the use of the public streets and park boulevards and subjects itself to the regulations imposed by municipal ordinances. (*People* v. *Thompson,* 341 Ill. 166.) The term "taxicab" has come to have a well-defined meaning in the law. It differs from the jitney bus, street car or omnibus as a carrier in that it does not follow a well-defined route prescribed by ordinance. A taxicab has become known as a vehicle subject to contract by a person desiring a special trip from one point to another without reference to any prescribed legal

route. (*Anderson* v. *Yellow Cab Co.* 191 N. W. (Wis.) 748; *People* v. *Milne,* 149 N. Y. Supp. 283; *Yellow Taxi-cab Co.* v. *Gaynor,* 143 id. 279.) It is apparent that one engaging a taxicab for a trip within a large metropolitan district is entitled to the safety provided by the ordinance, particularly if such person is a woman traveling at night who would not desire to be subjected to the intrusion of disorderly or dangerous characters as fellow passengers while in transit. Moreover, it is well known that, by ordinance, in such thickly populated centers, the rates are fixed by law and taxi-meters required so that a passenger can easily ascertain both the mileage and the cost of his trip. If the driver of the taxicab were permitted to pick up passengers in addition to the one hiring the cab, confusion as to rates and distances would necessarily ensue. The ordinance is regulatory in its nature, provides a penalty, and its purpose is for the safety and welfare of the passenger, whether white or colored. It is not intended, in the first instance, as a direction against the driver of the taxicab but rather as a safety measure for the benefit of the passenger. The ordinance in question not only comes well within the police power of the Chicago Park District under the statute creating it, but is an ordinance highly to be commended. *Chicago Park District* v. *Lattipee, supra.*

The regulation being valid, there remains the sole question as to whether the allegations of the complaint charging discrimination against colored drivers operating taxicabs over the boulevards of the Chicago Park District present a condition which is subject to relief in a court of equity, and if so, whether the allegations are sufficient to entitle the plaintiffs to the relief sought. It becomes apparent, at the outset, that if a court of chancery should grant the relief prayed to the colored drivers, then the white drivers of taxicabs operated by other corporations and companies would also be entitled to seek the protection of the same court in so far as their right to pick up passengers, contrary to the

express intention of the first occupant, was concerned. In such an event the result would be the nullification of a valid constitutional regulatory ordinance.

A number of cases in support of plaintiffs' position have been cited, but an examination of these cases discloses that an injunctional order was entered on the ground that the ordinance in question was invalid. Among the cases relied upon is *Yick Wo* v. *Hopkins,* 118 U. S. 356. This case, however, was not a chancery proceeding but reached the Supreme Court of the United States on a writ of error from a proceeding involving a writ of *habeas corpus.* An ordinance of the city of San Francisco provided that no one should establish, maintain or carry on a laundry within the corporate limits of the city and county of San Francisco without having first obtained the consent of the board of supervisors. From the facts it appears that several hundred licenses had been issued to white people operating laundries but a license refused in each instance to a member of the Chinese race. This ordinance placed in the power of a board of supervisors a discretionary power to issue licenses, and the court held that there was clearly an abuse of its discretion and also held that there was a discrimination. Such is not the fact in the ordinance involved in the proceeding before us inasmuch as there is no question of discrimination involved, but the ordinance in question is directed positively against any taxicab driver, regardless of race or color, violating section 12.

The case of *Dobbins* v. *Los Angeles,* 195 U. S. 223, also relied upon by plaintiffs, turned upon the question of the validity of an ordinance which, however, was held to be invalid. In that case the question was raised as to the power of a court of chancery to issue an injunction to enjoin the prosecution of a criminal case. The court recognized the rule that chancery had no such jurisdiction, but held that in that proceeding it did have power to entertain an application for an injunction, inasmuch as property

rights were involved and the ordinance in question was invalid and unconstitutional.

As a general rule it may be said that equity concerns itself only with property rights and will not intervene for the purpose of restraining the enforcement of a criminal statute. This is true even though the acts of the police department may be performed in an oppressive and unlawful way. (32 Corpus Juris, Injunctions, sec. 411, and cases cited.) Such is the rule, also, as to ordinances regulatory in their nature which provide a penalty for violation. (32 id. sec. 411.) This rule has been recognized in this State in the case of *City of Chicago* v. *Wright,* 69 Ill. 318, where the court in its opinion said: "The heads of the police department of Chicago are not mere municipal officers, whose functions relate exclusively to that particular municipality, but they are State officers—that is, officers whose duties concern the State at large, or the general public, although exercised within defined territorial limits. * * * The court of chancery is conversant only with questions of property and the maintenance of civil rights. It has no jurisdiction to interfere to aid a party in the violation of a public law, to overrule the policy of the State, or interfere with the public duties of any of the departments of government."

The complaint charges that the defendants have arrested, under the ordinance, certain colored drivers of taxicabs and have discriminated in favor of white taxicab drivers by permitting them to operate their cabs and violate the ordinance. A number of instances of violations by colored taxicab drivers have been alleged, and it is apparent, from a reading of the complaint, that such violations, in fact, actually occurred. While it is charged that white drivers have violated the ordinance, no single, specific instance is cited, nor is any company or person named. The allegations are entirely general in their character as to the white drivers and are mere conclusions of the pleader. Courts are not at liberty to entirely disregard facts of general

knowledge of which the courts, themselves, are cognizant. The fact is that, aside from the allegations of the bill, general information among residents of the Chicago area indicates that any person hiring a cab would presume that he had the right of direction. The chancellor found that the allegations of the complaint were indefinite, uncertain and inconclusive, and sustained the defendants' motion to dismiss the complaint for the want of equity. We see no reason for disagreeing with the conclusion of the chancellor in this regard.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE FARTHING, dissenting.