MIDWEST INVESTMENT COMPANY, appellant, v. CITY OF CHARITON, appellee.

No. 49100.

(Reported in 80 N.W.2d 906)

FEBRUARY 5, 1957.

A. V. Hass, of Chariton, for appellant.

V. E. Meyer, of Chariton, for appellee.

GARFIELD, J.—Plaintiff brought this equity suit to enjoin defendant-city from removing as a nuisance a private water hydrant installed by plaintiff in the street abutting its property. By cross-petition the city asked that the hydrant be removed. In an amendment to its petition plaintiff alleged defendant had made no attempt to eliminate, but had permitted, other encroachments and obstructions in its streets and alleys and its action in seeking the removal of plaintiff's hydrant is arbitrary and discriminatory, in violation of section 1 of the Fourteenth Amendment to the Federal Constitution and section 6 of Article I, Iowa Constitution. Following trial to the court there was a decree for defendant from which plaintiff has appealed.

Plaintiff owns a gasoline filling station and, adjoining it, a café at the edge of the business district in the City of Chariton. The property is a block south of the southeast corner of the city square and almost directly across the street west from the post office. Plaintiff installed a water hydrant in the sidewalk abutting its property, near the curb at the west edge of the paved roadway of the public street. The city notified plaintiff to remove the hydrant as a nuisance. Plaintiff refused and this suit followed.

The hydrant is 2 feet 8 inches high. It has a conical metal apron 2 feet one inch high and 2.6 feet wide at its base. There are about 8 feet of sidewalk between this base and plaintiff's east (front) lot line. From this hydrant plaintiff intended to sell water to users who would come for it in trucks to be parked adjacent to the hydrant.

The street and sidewalk at this point are heavily traveled by motor vehicles and pedestrians respectively and parking space for vehicles is not plentiful. It is difficult to alight from a car parked at the curb alongside the hydrant. Then too many motorists would doubtless assume they should not park near the hydrant. Aside from the hazards and inconvenience caused by the obstruction itself it is probable there would be added danger from some escape of water, and ice forming therefrom, when water is drawn from the hydrant.

■ I. We are clear this hydrant is an unlawful obstruction in the public street and constitutes a nuisance. A public street includes both the roadway for vehicles and the sidewalk for pedestrians. Hall v. Town of Keota, 248 Iowa 131, 135, 79 N.W.2d 784, 786, and citations.

■ That the hydrant was placed in what was formerly "the parking"—i.e., the strip of ground between the curb and the old, replaced sidewalk—when plaintiff acquired the property does not aid plaintiff. Such a strip is no less part of the public street which the city is required to keep in reasonably safe condition. Leonard v. Mel Foster, Inc., 244 Iowa 1319, 1324, 60 N.W.2d 532, 536, and citations.

Section 389.12, Code, 1954, provides that cities and towns "shall have the care, supervision, and control of all public * * * streets * * * and shall cause the same to be kept open and * * * free from nuisances."

Among the acts that are deemed nuisances by Code section 657.2 are: "5. The obstructing or encumbering by fences, buildings, or otherwise the public * * * streets * * *."

That this hydrant and the proposed conducting of part of plaintiff's business in the public street constitute a nuisance see Gates v. City Council of Bloomfield, 243 Iowa 1, 11, 12, 50 N.W.2d 578, 584; Cowin v. City of Waterloo, 237 Iowa 202, 209, 21 N.W.2d 705, 708, 163 A. L. R. 1327; Incorporated Town of Ackley v. Central States Electric Co., 204 Iowa 1246, 214 N.W. 879, 54 A. L. R. 474; Pugh v. City of Des Moines, 176 Iowa 593, 606, 156 N.W. 892, 896, L. R. A. 1917F 345; Lacy v. City of Oskaloosa, 143 Iowa 704, 709, 121 N.W. 542, 544, 31 L. R. A., N. S., 853; Quinn v. Baage, 138 Iowa 426, 430, 114 N.W. 205.

■ We quote from two of the cited cases. Lacy v. City of Oskaloosa, supra, states:

"A 'street' is a public way from side to side and from end to end, and any private use thereof which in any degree detracts from, hinders, or prevents its free use as a public way to its full extent is within the meaning of the law an obstruction or incumbrance. [Citations]

"The limited extent of the obstruction is immaterial as

affecting the right of the city to remove it. The fact that, notwithstanding the obstruction, there is still ample room left for passage of teams and travelers, will not exempt it from liability to removal whenever ordered by the proper municipal authority. [Citations] Nor is it any defense to such order that the obstruction is in fact a thing of public convenience or benefit [citations]."

Pugh v. City of Des Moines, supra, says: "The authorities seem uniform in holding that a person cannot carry on his business in a public street in such a way as to obstruct the street, either by placing actual physical obstructions upon it, or * * * so as to interfere with the public travel. If he does, he is chargeable as for nuisance."

II. Apparently plaintiff's counsel would not disagree with the above views were it not for the fact the city has failed to seek removal of other obstructions to its streets. Plaintiff offered evidence of the existence of many other obstructions, such as one to three steps at the entrance to some buildings, outside stairways to second floors and advertising signs, a gasoline pump and telephone booth in "parkings." Containers filled with fruits and vegetables were also piled on the sidewalk against the front of two grocery stores. Presumably this last condition exists only during business hours when weather permits.

Plaintiff particularly objects that the city council permitted a bank to place in the side of its building a "drive-in window" which protrudes into an abutting 15-foot alley about 21 inches at the top and 12 inches at the bottom. The vice president of the bank (who was also employed by one of the two grocery stores) was a member of the council and voted to permit construction of the window—the vote was unanimous.

Based on evidence of this kind plaintiff contends the hydrant does not constitute a nuisance because it says it is consistent with local usage. No Iowa decision is cited in support of this contention. Plaintiff relies mainly upon Pickrell v. City of Carlisle, 135 Ky. 126, 121 S.W. 1029, 24 L. R. A., N. S., 193, in which a town was enjoined from removing as a nuisance steps to plaintiff's home which extended 3½ feet onto the street.

Apparently no statutory violation was there shown and it affirmatively appears the town had enacted no general ordinance prohibiting such an encroachment upon its streets. The opinion makes it clear such an ordinance would be valid. The decision is based in part on the view which then obtained in Kentucky that a lot owner may acquire by operation of the statute of limitations a right to partially obstruct a public street. This is contrary to the rule in Iowa (Cowin v. City of Waterloo, supra, 237 Iowa 202, 211, 212, 21 N.W.2d 705, 709, 710, 163 A. L. R. 1327, 1333, and citations) and in every jurisdiction except perhaps Kentucky (39 Am. Jur., Nuisances, section 201; 66 C. J. S., Nuisances, section 92). See also annotation 152 A. L. R. 343, 358.

The case at bar is to be distinguished from Pickrell v. City of Carlisle, supra, in that this obstruction is a clear violation of Code section 657.2 (paragraph 5), heretofore quoted, and a general ordinance of defendant-city. No question is raised as to the validity of either the statute or ordinance. This obstruction falls within the definition of a public nuisance in each enactment.

We think this dangerous obstruction in the street is a nuisance even though the city may have taken no action to remove other obstructions in its streets and in one instance permitted an obstruction in an alley.

66 C. J. S., Nuisances, section 14, says: "A nuisance cannot be justified by the existence of other nuisances of a similar character, * * *. Custom does not justify a nuisance."

39 Am. Jur., Nuisances, section 18, states: "It is no justification or excuse for creating or maintaining a nuisance that * * * other persons maintain similar nuisances in the vicinity."

A recent decision that supports these texts is Barrett v. Lopez, 57 N. M. 697, 262 P.2d 981, 44 A. L. R.2d 1377, 1381.

The effect of plaintiff's contention is that the city's failure to take action to remove other obstructions in its streets confers upon plaintiff the right to violate a valid statute and ordinance or legalizes such violation and that equity will protect him in so doing. The contention cannot be sustained.

In Society of Good Neighbors v. Van Antwerp, 324 Mich. 22, 25, 36 N.W.2d 308, 309, plaintiff sought to enjoin city offi-

cials from interfering with its conduct of bingo games, in part on the ground many other such games were permitted in the city and "plaintiff has been singled out as the sole object of police interference." In denying relief the opinion says (pages 27, 28 of 324 Mich., page 310 of 36 N.W.2d):

"Nevertheless, a right to violate the law can never be conferred by laxity in its enforcement as to others. The very foundation of a court of equity is good conscience, and it will not lend its aid by way of the extraordinary writ of injunction to assist law violators. He who hath committed iniquity shall not have equity [citation], and he who comes into equity must come with clean hands [citation].

"We are not here concerned with other law violators. If peace officers are derelict in their duties as herein charged, we cannot adjudge that complaint within the confines of the instant case."

Similar precedents include Eastwood Park Amusement Co. v. Stark, 325 Mich. 60, 38 N.W.2d 77, 79; Loder v. City of Canton, Ohio Com. Pl., 111 N.E.2d 793, 796; Wishing Well Club v. City of Akron, Ohio Com. Pl., 112 N.E.2d 41, 45.

Masonic Cemetery Assn. v. Gamage, 9 Cir., Cal., 38 F.2d 950, 71 A. L. R. 1027, certiorari denied 282 U. S. 852, 51 S. Ct. 30, 75 L. Ed. 755, was an action to enjoin enforcement of an ordinance of San Francisco declaring plaintiff cemetery a nuisance and directing removal therefrom of bodies buried therein. A similar ordinance applied to another cemetery but no such municipal action was taken with reference to two other near-by cemeteries. Plaintiff cemetery contended the city could not abate maintenance of one of the cemeteries without proceeding against all. Plaintiff here makes a like contention. In upholding the action taken by the city the court states (page 956 of 38 F.2d, pages 1036-7 of 71 A. L. R.):

"If these cemeteries are in fact all public nuisances, there is nothing to prevent their abatement one at a time. * * *

"All the zoning ordinances recently upheld by the Supreme Court are discriminatory in the sense that some property holders

are permitted to do and others prohibited from doing the same things in localities which are not dissimilar in actual fact. [Citations]

"We think these authorities and the principles upon which they were described clearly establish that a mere failure to abate one or more nuisance does not prevent the abatement of others by the public authorities nor justify those maintaining the ones sought to be abated in invoking the equitable powers of the court to assist them in maintaining the nuisances against the will and the authority of those empowered and intrusted * * * with the duty of defining and abating such nuisances."

37 Am. Jur., Municipal Corporations, section 200, says: "It is well settled that a municipality is not precluded * * * from enforcing an ordinance merely because certain persons have been permitted to violate it without prosecution or punishment."

III. Plaintiff contends defendant's requirement the hydrant be removed as a nuisance is arbitrary and discriminatory, in violation of plaintiff's constitutional right to the equal protection of the laws within the doctrine of Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220.

In the cited case San Francisco passed ordinances making it unlawful to carry on a laundry in the city without obtaining consent of a board, unless it was located in a brick or stone building. The ordinances vested arbitrary, unlimited power in the board to grant or withhold its consent at will. In administering the ordinances the board refused its consent to all 200 Chinese laundrymen who applied and granted it to all but one of the many applicants who were not Chinese. It clearly appeared the ordinances were passed and administered to discriminate unjustly against the Chinese and deprive them of their right to pursue a lawful business. The supreme court held plaintiff was denied the equal protection of the law by both the ordinances and their administration.

The Yick Wo decision is a righteous one but it is not applicable here. The case differs from the one at bar in that the ordinances there at issue vested unlimited, arbitrary power in the board to prohibit a lawful business. Here neither statute

nor ordinance vests such power in anyone and plaintiff is violating a concededly valid ordinance by the maintenance of this obstruction. In so doing he is not engaged in a lawful business.

Two of the precedents discussed in Division II hereof contain a complete answer to this contention of plaintiff. We will not repeat what we have already said about them. In each case it was contended the equal protection of the laws was denied upon considerations such as plaintiff has urged here. In Society of Good Neighbors v. Van Antwerp, supra, 324 Mich. 22, 36 N.W.2d 308, plaintiff strongly relied on Yick Wo v. Hopkins, supra, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220. The court held refusal to restrain defendants' interference with plaintiff's conduct of bingo parties was not a denial of equal protection of the law although other such games were not molested. And Masonic Cemetery Assn. v. Gamage, supra, 38 F.2d 950, 956, 71 A. L. R. 1027, 1036–7, holds plaintiffs were not denied equal protection of the laws by the city's neglect to declare other cemeteries were nuisances. What we have quoted from these two opinions in Division II was partly in response to the claim of denial of equal protection of the law.

Another precedent that rejects a contention similar to the one urged by plaintiff here, in which Yick Wo v. Hopkins, supra, was relied upon, is Jackie Cab Co. v. Chicago Park District, 366 Ill. 474, 9 N.E.2d 213, 112 A. L. R. 1410.

Should plaintiff be granted the relief it seeks each of the other property owners who have obstructed a street would be entitled to the same relief. The ultimate result would be nullification of part of a valid statute and ordinance. Society of Good Neighbors v. Van Antwerp, supra, at page 27 of 324 Mich., page 310 of 36 N.W.2d; Jackie Cab Co. v. Chicago Park District, supra, at page 478 of 366 Ill., page 215 of 9 N.E.2d. The effect of plaintiff's position is that each of these property owners has a constitutional right, which equity will protect, to maintain an obstruction in a street unless all are prohibited. We cannot accept this view.

See as further tending to support our conclusion Linnenkamp v. Linn, 243 Iowa 329, 334, 51 N.W.2d 393, 395.

 IV. The remaining proposition plaintiff relies upon for reversal is that it should have been permitted to prove the

acts of defendant in seeking removal of the hydrant were prompted by malice and ill will of its representatives and officials. A short answer to this contention is that plaintiff was not prevented from offering whatever evidence it saw fit to produce and was permitted to make a complete record.

We may observe, however, there is no claim of malice or ill will in the passage of the ordinance stating that obstructing or incumbering of public streets shall be deemed a nuisance which is prohibited. This is substantially the language of Code section 657.2. Indeed it is well settled that the motives of a city council in passing an ordinance will not, as a rule, be inquired into by the courts. Huston v. City of Des Moines, 176 Iowa 455, 477, 156 N.W. 883, and citations; Tayloe v. City of Wahpeton, N. D., 62 N.W.2d 31, 39; Oscar P. Gustafson Co. v. Minneapolis, 231 Minn. 271, 42 N.W.2d 809, 812; annotation 32 A. L. R. 1517; 62 C. J. S., Municipal Corporations, section 200; 37 Am. Jur., Municipal Corporations, sections 68, 182.

If we assume, without deciding, the motives of the council in enforcing such an ordinance may be inquired into we find no evidence of malice or ill will that would entitle plaintiff to injunctive relief. Failure to cause removal of other obstructions and the granting of permission to maintain an obstruction in an alley are the most that are shown. See in this connection Society of Good Neighbors v. Van Antwerp, supra, 324 Mich. 22, 36 N.W.2d 308.—Affirmed.

All JUSTICES concur except WENNERSTRUM, J., who takes no part.