# Compton's Administrator v. Borderland Coal Company.

### (Decided March 8, 1918.)

## Appeal from Pike Circuit Court.

1. **Descent and Distribution—What Law Governs.**—The distribution of the estate of an intestate is governed by the law of the state in which he was domiciled.

2. **Executors and Administrators—Payment of Debt to.**—An administratrix of the estate of an intestate who has been appointed and has duly qualified in the state of the domicile of the intestate, is vested with power to receive payment of a debt due the estate of the intestate or from a former employer of the intestate a payment of damages for the latter's death resulting from such employer's negligence, and give a proper acquittance therefor, wherever the debtor or employer may be, within or without the state. But if the debtor or person liable for the damages resides in a state other than that of the domiciliary administratrix and it is necessary to sue for the debt or damages, such suit cannot be maintained by her, but would have to be brought by an administrator appointed in the state where the debt or liability for the damages exists.

3. **Executors and Administrators—Payment of Debt to.**—A voluntary payment of a debt or liability for damages made to a foreign domiciliary administrator is valid, although an adminstrator has been appointed in the state where the payment is made, if the person making it is without actual notice of such appointment.

4. **Executors and Administrators—Payment of Debt to—Notice—Appointment.**—The fact that the appointment of an administrator is made of record in the office of the court making the appointment, does not operate as constructive notice of such appointment, so as to invalidate the payment subsequently made to an administrator appointed in the state of the domicile of the decedent.

ROSCOE VANOVER and J. C. CANTRILL for appellant.

J. J. MOORE, JAMES P. WOODS and SAMUEL D. STOKES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Affirming.

December 21, 1915, John Compton, an employee of the appellee, Borderland Coal Company, while engaged in the work of mining coal for it in Pike county, was killed by a block of slate which fell upon him from the roof of the mine, and this action was brought by the appellant, Roscoe Vanover, as administrator of his estate, seeking

to recover of appellee damages for his death; it being alleged in the petition that it was caused by the negligence of appellee and its mine foreman in failing to provide him with a reasonably safe place for the performance of the work required of him. The amount of damages claimed was $3,000.00. The appellee filed an answer which, with its amendments, consisted of four paragraphs; the first, containing a traverse; the second, a plea of contributory negligence on the part of the decedent; the third, assumption of risk by the latter. In the fourth paragraph it was alleged, in substance, that at the time of his death John Compton was a *bona fide* resident of Scioto county, Ohio, with his family, consisting of a wife and two children; that he came to Kentucky shortly before his death to accept temporary employment in appellee's mine, intending and expecting to return in a few weeks or months to his home and family in Scioto county, Ohio; that he did not own any property or owe any debts in Kentucky; that his widow, Belle Compton, was on January 20, 1916, appointed by the probate court of Scioto county, Ohio, administratrix of his estate and then gave the necessary bond and duly qualified as such; and that between that date and January 26, 1916, the day of the institution of this action in the Pike circuit court by appellant, she, in West Virginia, the state in which appellee was incorporated and where it has its chief office, as administratrix of the decedent's estate, made with appellee a compromise and settlement whereby the liability of appellee, if any there was, for the death of the decedent was agreed by the parties to be settled and discharged by its payment to her of $2,000.00 damages, which amount was paid by appellee and accepted by her January 27, 1916, in full satisfaction of the damages sustained by the decedent's estate for and on account of his death, which payment and settlement, it was alleged, was made and consummated without information or knowledge on the part of appellee or the administratrix of the decedent's estate. that the appellant had instituted this action, or been appointed administrator of the decedent's estate in Kentucky.

Appellant filed a general demurrer to the answer, as amended, and each paragraph thereof, and, without waiving his right to insist upon same, by reply controverted the affirmative matter of the answer, as amended, except the fourth paragraph thereof. The circuit court,

being of opinion that the matters set up in the fourth paragraph of the answer constituted a good defense, overruled the demurrer and appellant failing to plead further, his petition was dismissed and appellee awarded its costs. Appellant complains of the judgment entered in conformity to these rulings; hence this appeal.

The following facts are admitted by the pleadings: (1) That at the time of his death, December 21, 1915, in Pike county, Kentucky, the decedent, Compton, was a *bona fide* resident of Scioto county, Ohio. (2) That appellant, by an order of the Pike county court made January 17, 1916, was appointed and duly qualified as administrator of his estate. (3) That appellant instituted this action against appellee January 26, 1916. (4) That Belle Compton, the widow of the decedent, was, by an order of the probate court of Scioto county, Ohio, duly appointed administratrix of his estate January 20, 1916. (5) That the decedent at the time of his death did not own any property in the State of Kentucky nor owe any debts therein. (6) That the appellee is a corporation created under the laws of West Virginia and has its chief office in that state. (7) That during the time that intervened between January 20th and January 26, 1916, appellee contracted and agreed with Belle Compton, as administratrix of the decedent's estate, to pay her $2,000.00 in full settlement of all damages claimed by her for his death and that this sum was paid her by appellee January 27, 1916. (8) That at the time appellee thus contracted and agreed to pay the $2,000.00 to Belle Compton as administratrix in settlement for the death of her husband, this action had not been instituted by appellant, and when the payment of that sum was later made to her January 27, 1916, neither appellee nor Belle Compton had any knowledge of the institution of this action by appellant, nor of his appointment by the Pike county court as administrator of the decedent's estate. (9) That after receiving the $2,000.00 paid her by appellee Belle Compton, as administratrix of her husband's estate, distributed and paid the same to the persons entitled thereto.

We have not been referred to nor have we found a case decided in this jurisdiction the facts of which were similar to those presented in the instant case. But as the death of the decedent occurred in this state and the cause of action arose therein, the remedy afforded by its law, if an action was necessary, must control as to the

recovery of damages for his death and by whom the action therefor should have been brought. Section 241 Constitution provides:

"Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made the same shall form part of the personal estate of the deceased person." By section 6, Kentucky Statutes, it is provided:

"Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then in every such case, damages may be recovered for such death from the person or persons, company or companies, corporation or corporations, and agents or servants, causing the same, and when the act is wilful or the negligence is gross punitive damages may be recovered, and the action to recover such damages shall be prosecuted by the personal representative of the deceased. The amount recovered, less funeral expenses and the cost of administration, and such costs about the recovery, including attorneys' fees, as are not included in the recovery from the defendants, shall be for the benefit of and go to the kindred of the deceased in the following order, viz.: . . . . 2. If the deceased leaves either a widow and children or a husband and children, then one-half to such widow or husband and the other one-half to the children, of the deceased." Section 3880, Kentucky Statutes, provides:

"If there be an executor or administrator of such decedent qualified by a court of this Commonwealth, he alone shall have power to sue; but any debtor who shall pay his debt, or part of it, according to the provisions of the foregoing sections, without notice thereof, shall be discharged to the extent of such payment." It will be seen from the language of this section that authority to bring such action is conferred upon the resident administrator alone. L. & N. R. R. Co. v. Brantley, 96 Ky. 297; Brown v. L. & N. R. Co., 97 Ky. 228.

The question we are called upon to decide, however, is not whether appellant had authority to bring the action, but whether the settlement of damages made with the widow and Ohio administratrix of the decedent by appellee before its institution, but paid the day after its institution, admittedly, without knowledge on the part of either of them that the action had been instituted or that appellant had been appointed by the Pike county court administrator of the decedent's estate, constituted a valid defense to the action. Section 3882, Kentucky Statutes, declares that "a personal representative may compromise and settle any claim or demand for damages growing out of injury to or the death of the decedent."

In McFarland's Admr. v. L. & N. R. R. Co., 130 Ky. 172, we held that the compromise of a claim for damages for the death of decedent, made under the authority conferred by section 3882, by an administrator acting under a voidable appointment was valid and binding upon one appointed administrator after the removal of the. administrator making the compromise.

It is true we have held that a foreign administrator cannot sue in this state for a tort, and that the words "debts due the decedent," found in section 3878, Kentucky Statutes, for which a non-resident executor or administrator by giving bond with surety resident of the county in which the action is brought, is therein given authority to sue, do not include torts. L. & N. R. R. Co. v. Brantley, 96 Ky. 297; but there seems to be nothing in that section or any other that would prevent a foreign personal representative from receiving in good faith a debt due his decedent, or money by way of damages for a tort resulting in the death of his decedent, that might in like good faith be voluntarily paid by the debtor or tort feasor; or which would prevent the foreign personal representative from giving the payor such an acquittance for the payment as would fully release him from all future liability for such debt or damages. Indeed, as we have already seen, section 3880, *supra*, which declares that an executor or administrator of the decedent, qualified by a court of this Commonwealth, shall alone have power to sue for the death of the latter, seems to recognize the principle stated when it further declares that "any debtor who shall pay his debt, or part of it, according to the provisions of the foregoing sections, without notice thereof (i. e., without notice of the qualification of the

resident personal representative or of a suit by him to recover the debt), shall be discharged to the extent of such payment." Obviously, if the voluntary payment of a debt under such circumstances to a non-resident personal representative would operate as a discharge to the debtor, for the same reason would the settlement of a claim of damages with the foreign personal representative and the payment to the latter of the amount of damages agreed upon in the settlement, operate as a discharge to the payor, if such payment were made and accepted in good faith and without knowledge upon the part of the payor or payee that there had been a resident personal representative appointed, or a suit instituted by the latter for the recovery of the claim for damages thus settled. No reason is perceived for holding that a claim for damages for the death of the decedent is of any greater dignity than a debt owing to the estate of the decednt.

As the decedent, Compton's wife, was appointed administratrix of his estate in Scioto county, Ohio, the county and state of his residence, she is the principal or domiciliary administratrix, and the appellant, having been appointed in Kentucky, is an ancillary administrator. The title of a domiciliary representative unlike that of an ancillary representative extends to all of the decedent's personal estate wherever situated, but the title of the ancilary representative is limited to the assets within the jurisdiction of his appointment. In 18 Cyc. 1229, in dealing with the rights and powers of domiciliary representatives, it is said:

"Letters of administration extend only to the assets in the jurisdiction where the letters are granted, and do not confer as a matter of right any authority to collect assets in another. But since a foreign domiciliary representative has a title to assets wherever situated which may be recognized in the absence of local creditors or a local administration, he may under such circumstances take possession of property of the estate if he can do so peaceably and without suit, and his possession will be recognized as rightful and protected as fully as if he had taken out local letters of administration. He may also collect a debt due to the estate if voluntarily paid, and such payment is a valid discharge of the debt; and a protection against an action to collect the same debt by a domestic representative subsequently appointed; and since debts due from the United States have no *situs* at

the seat of government, they may be received by a domiciliary representative at any place where the government may choose to pay them." 108 U. S. 256, 27 L. Ed. 718.

In Crosswell on Executors and Administrators, 152, the following statement of the law upon this subject will be found:

"The main rule or essential point of the rules relating to administration in various jurisdiction is, that the administration which is taken out in the country of domicile of the deceased is the principal or domiciliary administration. Any other administration is ancillary, whether it may or may not be prior in point of time to the administration in the domicile of the deceased. The reason for this distinction is evident in the fact that the personal estate, which is the basis of administration, is governed by the laws of the domicile of the deceased, and all questions as to the settlement and distribution of that estate should be settled by the laws of that country or state." Again in the same volume at page 153 it is said:

"There are, however, points in which the existence of the principal administration affects the ancillary administration. Thus, the principal administrator, since he represents the general creditors, heirs and next of kin, has such an interest in the proceedings in another state that he is entitled to appear in time, and take such steps therein as may seem suitable and legal; for example, he may appeal from a decree of a judge of probate appointing an ancillary administrator."

We think it undoubtedly true that the domiciliary administratrix could have gone into the state of West Virginia where appellee was incorporated and where it has its corporate residence and there maintained an action against it on account of the death of her husband, which occurred in the state of Kentucky through the negligence of appellee, by pleading the constitutional provision and those of the statute of Kentucky, giving a cause of action for his death. Or if prohibited by the laws of West Virginia from so doing the action could have been instituted through an administrator appointed in that state by pleading the laws of Kentucky authorizing the recovery, and thereby maintained the action under the comity existing between the two states. The domiciliary administratrix went into the state of West Virginia and there made settlement with appellee, and was paid by it $2,000 accepted in satisfaction of the damages claimed on ac-

count of his death. This we think she had the authority
to do under the general power conferred upon her by
law as domiciliary administratrix to receive for the es-
tate anyting in the way of property or money that could
be regarded as assets thereof, which might voluntarily
be delivered or paid her; and it is admitted by the plead-
ings that no one had been appointed or qualified as ad-
ministrator of the decedent in West Virginia.

It is further admitted by the pleadings that whatever
amount of damages the appellee may have been or is
liable for on account of the death of John Compton will
have to be distributed in accordance with the laws of the
state of Ohio, and that the $2,000.00 damages which the
domiciliary administratrix received of appellee she has
distributed as required by the laws of that state. So if
it were conceded that the appointment of appellant as
administrator by the Pike county court was authorized,
as there were no debts owing by the decedent in this state,
it would have been the duty of appellant if he had re-
ceived the $2,000.00 paid by the appellee to transmit the
money, less the cost of administration, to the domiciliary
administratrix for distribution in accordance with the
laws of the state of Ohio. In other words, the princi-
pal object of the law in requiring the ancillary adminis-
tration in Kentucky would be to aid the foreign or domi-
ciliary administratrix in the collection of the claim for
damages against appellee because she could not compel
the payment of such damages by suing as administratrix
in the state of Kentucky. So in the case here presented we
find that by the voluntary payment of $2,000.00 in dam-
ages made by appellee to her the domiciliary administra-
trix obtained an apparently fair settlement for the death
of the decedent, without the assistance of the resident
administrator and without such cost to the estate as
would have attended his collection of the demand by
suit.

The view we have expressed of the law of this case is
fully sustained by the case of Maas v. German Savings
Bank, 176 N. Y. 377, 98 Am. St. Rep. 689, the facts of
which are thus stated in the opinion:

"Frieda Maas died at her residence in Guttenberg,
Hudson county, state of New Jersey, on the fifteenth day
of November, 1898, leaving surviving her a son and
daughter, both minors and residents of the same place.
On the twenty-third day of August, 1899, the surrogate

of Hudson county, New Jersey, issued letters of administration upon her estate to Frederick Maas, a brother of her deceased husband. After his appointment he presented a certified copy of his letters of administration to the defendant bank, together with her pass book, and demanded the payment to him of the amount which the decedent had upon deposit and thereupon the bank paid over such balance to him. Prior thereto, and on the ninth day of March, 1899, the plaintiff, Charles Maas, another brother of the decedent's deceased husband, applied and had issued to him letters of administration upon her estate by the surrogate of New York county in this state, and after the defendant bank had paid the amount of such deposit. The bank having refused, this action was brought (by the New York administrator) to recover the amount thereof. Upon the trial the facts were agreed upon. It does not appear that the decedent had any creditors in this state, and it is conceded that the defendant bank in making its payment did so in good faith, without actual notice that letters of administration had been issued in this state. The question thus presented is as to whether the plaintiff, under such circumstances, can recover."

It was held that he could not recover and that the payment made by the bank to the foreign or domiciliary administrator was in all respects valid. After a careful reading of the opinion we find much of its reasoning and all of its conclusions stated with such admirable clearness and fullness in the syllabus that we have concluded, owing to the length of the opinion, to quote from the syllabus alone, which is as follows:

"The succession to, and the distribution of, the estate of an intestate are governed by the law of the domicile. Where an administrator has been appointed and has properly qualified in the state of the domicile of the intestate, he is vested with power to receive payment of debts and to take possession of assets and give proper acquittances therefor wherever the debtors or the holders of the assets may be, within or without the state; but where the debtor or the holder of the assets is in a foreign jurisdiction, and the debts are not paid or the assets surrendered to the administrator of the domicile, the courts of the foreign jurisdiction will not enforce a recovery of such debts or assets until an administrator has procured ancillary letters or a new administrator has been ap-

pointed under the laws of the state where the debts exist or the assets are.

"A voluntary payment to a foreign administrator is valid although an administrator has been appointed in the state, it not being the domicile of the intestate, and the person having no actual notice of such appointment.

"The fact that the appointment of an administrator is made of record in the surrogate's office does not operate as constructive notice of such appointment, so as to invalidate a payment subsequently made to an administrator appointed in the state of the domicile of the decedent."

The conclusions expressed in the opinion, *supra,* are supported by the numerous authorities cited therein. In view of the admissions of fact made by the pleadings in the instant case, no reason is perceived for disagreeing with the action of the circuit court in holding that the fourth paragraph of the appellee's answer constituted a complete defense to the action; hence, the overruling of the demurrer to the answer and dismissal of the petition, was not error.

Wherefore, the judgment is affirmed.