## Goodman, Administrator v. First National Bank of Stone.

(Decided February 11, 1927.)

### Appeal from Pike Circuit Court.

1. Executors and Administrators—Ancillary Administrator Has no Authority Over Deceased's Assets in Jurisdictions Other Than One of Appointment.—Ancillary administrator has no power over assets of deceased in jurisdictions other than one of his appointment, and especially in jurisdiction of domiciliary administrator.

2. Executors and Administrators—Net Assets Collected by Foreign Ancillary Administrator After Distribution to Creditors May be Obtained from Him by Domiciliary Administrator.—Domiciliary administrator may obtain from foreign ancillary administrator net assets collected by latter after complying with local law as to their distribution among creditors.

3. Executors and Administrators—Valid Acquttance to Foreign Debtor of Deceased May be Given by Domiciliary Administrator, Though Collection May Not be Enforced Without Local Authority.—Domiciliary administrator, in absence of foreign creditors, may give valid acquittance to foreign debtor of deceased in collecting assets of estate, though he may not enforce collection without local authority to do so.

4. Executors and Administrators—Foreign Ancillary Administrator Cannot Collect Assets in State of Resident Decedent's Domicile as Against Domiciliary Administrator Subsequently Appointed.—Foreign ancillary administrator cannot, by virtue of foreign appointment alone, collect and give valid acquittance for assets having legal situs in state belonging to deceased resident of state, as against domiciliary administrator subsequently appointed by county court of county in which decedent resided at time of death.

JOHNSON, AUXIER & HINTON for appellant.

J. C. CANTRELL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Hrestos Matheos, a native of the country of Greece, died on February 1, 1925, a resident of Pike county, Ken-

tucky, and intestate. On the 16th day of February thereafter, the county court of Mingo county, West Virginia, and which under the laws of that state possessed jurisdiction to do so, appointed one E. D. Stroehecker as administrator of the estate of the decedent, although he neither resided therein at the time of his death, nor did he own assests at that time, so far as disclosed by the record, having a situs in that county. At the time of decedent's death he had on deposit subject to check $1,484.75 with appellee and defendant below, the First National Bank of Stone, Kentucky, a banking institution located and doing business in Pike county. Two days after the appointment of Stroehecker he made demand of the defendant, bank, accompanied by a duly issued check by him for the payment to him of the deposit account in the name of the decedent. The bank had already paid the undertaker's bill amounting to $167.50, which it deducted from the deposit account and honored Stroehecker's check by paying to him $1,268.27, leaving a balance of the account in its hands of $48.98, which seems to have been due to an oversight or mistake as to the correct amount of the deposit. On March 6, 1925, the appellant and plaintiff below, Adolph Goodman, was duly appointed by the county court of Pike county, Kentucky, administrator of decedent, and he qualified as such. Following his appointment he made demand of defendant to pay to him the full amount of the deposit account, but it declined to do so, and he subsequently filed this ordinary action against it to obtain judgment therefor, and it answered denying his right to collect any sum from it (unless, perhaps, for only $48.98) because of the foregoing facts, which it also incorporated in its answer. The court overruled a demurrer filed to the answer and the parties entered into an agreed stipulation of facts upon which, and the pleading in the cause, it was submitted to the court without the intervention of a jury, and it rendered judgment against the bank in favor of plaintiff for the $48.98 plus the undertaker's bill, or for a total sum of $216.48, but dismissed the petition in so far as it sought the recovery of any part of the payment made to Stroehecker, the West Virginia administrator, and from that judgment plaintiff prosecutes this appeal after his motion for a new trial was overuled.

The precise question, which is sharply presented, is: Whether a foreign ancillary administrator or personal

representative may, by virtue of his foreign appointment alone, come into this commonwealth and collect and give valid acquittance for assets having a legal situs here and which belonged to a deceased resident of the commonwealth, as against a domiciliary administrator subsequently appointed by the county court of the county in which decedent resided at the time of his death? The trial court, as will be noted, answered the question in the affirmative, but which we are convinced was error.

In the first place it is doubtful if the appointment of Stroehecker by the West Virginia court was valid for any purpose in the absence of the existence of assets having a situs in that state, or, perhaps, in the county where the appointment was made (see 24 C. J. 1112, para. 2675), but we have concluded that, for the purposes of this case, we will not enter into that field of investigation, but will treat the record as though it did appear that there were such local assets. We have also concluded to not lengthen the opinion in an effort to demonstrate that Stroehecker was only an ancillary administrator, or to prove that plaintiff was the domiciliary administrator, since all authorities agree that under the stated facts they each occupied such relations to the estate of the decedent. See 11 R. C. L. 429, para. 527. In the following paragraph on page 430 of the same work, it is pointed out that ancillary administration is more properly speaking a *special* or *limited* one and vests the appointee with only authority over assets "situated in the state where the administration (ancillary) is granted." He is vested with no power or authority over assets situate in other jurisdictions and especially in that of the domiciliary administrator. The latter has much broader powers in that he has the right to demand of and obtain from an ancillary administrator the net assets collected by the latter after complying with the local law as to their distribution among creditors.

Moreover, the domiciliary administrator where there are no foreign creditors may give a valid acquittance to a foreign debtor of his deceased in the same jurisdiction in collecting the assets of the latter's estate, though he may not *enforce* such collection without some local authority to do so. R. C. L. *supra,* page 432, par. 532, and page 434. par. 534. To the same effect is the text in 24 C. J., pages 1110-1111-1112, both inclusive. The general principles as so stated have been adopted by this court in a great number of

cases, some of which are Fletcher's Admr. v. Sanders, 7 Dana 345; Fidelity Trust Co. v. Williams, 32 K. L. R. 303, and Compton's Administrator v. Borderland Coal Co., 179 Ky. 695. The authorities referred to broadly lay down the rule that no principle of common law arising under comity between the states or otherwise extends the authority of an ancillary administrator beyond the jurisdiction under which he was appointed, and it was so expressly held in the Fletcher case *supra*. See also to the same effect Wharton on the Conflict of Laws, volume 2, page 1378, section 626. The annotation beginning on page 276, 10 A. L. R., to the case of Richardson v. Neblett, reported on page 272 of the same volume, contains a learned discussion of the right of a foreign executor or administrator to discharge or assign debts of his decedent. On page 277 it is pointed out that the collection and discharge of foreign debts by the domiciliary administrator, under given circumstances, are good in law, but, since that question is not the one here presented we will not stop to point out the instances wherein that is true, except as hereinafter stated, and for explanatory purposes only. Reference is made to the annotation wherein the above principles are announced without the insertion of excerpts therefrom.

But it might be insisted that under the Williams and Compton cases *supra*, a payment to a foreign representative was upheld as against a subsequently appointed local representative in this state, and that under those opinions the judgment appealed from was correct. But an examination of those cases will demonstrate the error of that position. In each of them the locally appointed representative was but an *ancillary* one, and the payment in the one case and the settlement of the claim for damages for a tort in the other was made to and with the foreign *domiciliary* administrator, and it was held that as between him and the locally appointed ancillary administrator the discharges of the obligations thereby effected were valid; which was an entirely different situation than the one we have here. The domiciliary administrator, as we have seen, is the principal and chief one for the estate of his decedent and may voluntarily collect assets of that estate having a situs in a foreign jurisdiction, and the last two cases referred to but upheld that legal proposition; and section 626a in Mr. Wharton's work *supra*, referred to in the Williams opinion, as the text demonstrates, has no reference to collections made

by a foreign ancillary administrator, but only to those made by foreign domiciliary administrators. As to the former, as we have seen, he has no authority over or interest in assets having a situs outside of the jurisdiction appointing him, and which is the exact situation we have here with reference to the ancillary administrator appointed by the West Virginia court.

It, therefore, appears that the trial court erred in dismissing the petition and in refusing to render judgment in favor of plaintiff for the amount paid to the foreign ancillary administrator, and the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion.