## Commonwealth v. Ott.

(Decided February 3, 1928.)

### Appeal from Oldham Circuit Court.

1. Domicile.—To constitute a change of residence, there must be both a removal to new location and intention to make such location one's new home, and intention to "change" residence must be actually carried out.

2. Taxation.—Where defendant expressed his intention to remove to Florida, and make it his residence, purchased home in Florida, notified church and county officers and his business friends of his intention, sold two farms in Kentucky, and no longer voted in elections in Kentucky, held that defendant was resident of Florida, and hence state of Kentucky could not assess certain intangi-

ble property to him for taxation, notwithstanding that he spent more time in Kentucky than in Florida.

WM. J. CROWE, ROBT T. CROWE, and W. B. GILFILLAN for appellant.

LEO T. WOLFORD, J. BALLARD CLARK, WM. MARSHALL BULLITT and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

The commonwealth began this action against Henry L. Ott to require him to assess certain intangible property for taxation for the years 1920 to 1927, inclusive, and to recover judgment for such taxes and penalties thereon. It was successful in the county court, whereupon Ott appealed to the circuit court, and there he was successful. From that judgment the commonwealth has appealed. The evidence shows conclusively that Ott had listed and paid taxes on all of this property during all these years, except 1925 and 1926. The commonwealth admits the taxes for the former years have been fully paid, and Ott admits that he did not list or pay taxes on this property in the year 1925 and 1926, and says, as his excuse for so doing, that he was a resident of Florida in those years. The only question in this case is: Was Ott a resident of Florida?

Ott came to Kentucky from Pittsburgh, Pa., about 20 years ago, and made his residence at Crestwood, in Oldham county. In 1924 he went to Florida on a hunting trip, which was his first visit to the state, except a business trip made there some years before. At the time of this hunting trip, Florida was just beginning to attract public attention, and what is referred to in this record as the Florida fever was just starting. Ott was captivated by the state and its possibilities, and, after his return, he decided to move to Florida, and make it his residence, and in May, 1925, he purchased a home at 818 S. Edison street, Tampa, Fla., which he furnished at an expense of about $8,000. After living there a few weeks, he and his wife decided to remodel the home, and, by reason of the hot season and this remodeling, they left Florida, and went to French Lick Springs, where they stayed for some time. They then returned to his former home in Crestwood, and Ott and his family expected to return to Florida just after Christmas, but on Christmas Day Ott was struck by a train while crossing a railroad track. As a

result he was confined in the hospital for quite a while, and he and his family did not return to Florida until February 25, 1926. They remained there until the hot weather in the summer, when they returned to Crestwood, expecting to go to Florida again just after the holidays; but Mrs. Ott's mother suffered a stroke of paralysis, and her mother's illness, together with the illness of Mrs. Ott herself, delayed their return to Florida until March, 1927.

The facts relative to Ott's change of residence, upon which he relies, are that, after making up his mind to move to Florida, he notified his friends and the community generally that he was going to make that his home; he notified his church and its officers, the county attorney, the county clerk, the sheriff and tax commissioner of Oldham county. He advertised and sold the two farms that he owned in Kentucky. He notified his banker in Louisville, and he had his checks reprinted so as to give his name and address as Tampa, Fla. The bank, thus notified that Ott was a nonresident of the state, did not list for taxation cash that Ott had on deposit with it. Ott notified his brokers that he had changed his residence, and gave them his new address. He is a director in the Standard Sanitary Manufacturing Company, and he notified the officers of that company at Louisville, Ky., at Pittsburgh, Pa., and Jersey City, N. J., and had them change their records, so as to show his new address. Since May, 1925, he has always registered at hotels as a resident of Tampa, Fla. He paid poll taxes in Florida, and filed his receipts therefor. He refused to vote in elections in Oldham county, and gave as his reason therefor that he was not a resident of Kentucky. For the same reason he declined to serve as a juror when summoned for that purpose in the Oldham circuit court. He opened a bank account in Florida. He had his business cards and stationery reprinted to show his address at Tampa. He rented a lock box in a bank at Tampa and removed to that city the securities in question, and deposited them in that lock box, and there they have since remained, except certain securities which he was endeavoring to sell. He purchased an automobile and a yacht in Florida, and gave his address as Tampa. He has six automobiles in Oldham county, and, when he obtained licenses on them, he gave his address as Tampa. He has some dogs in Oldham county upon which he procured licenses, and gave his address as Florida. Ott relies on

the foregoing facts to establish that he is a resident of Florida, while the commonwealth endeavored to show that he is still a resident of Kentucky by these facts:

Mr. Ott is a member of the Methodist Church at Crestwood. He is president of the board of trustees of that church. He owns 38 acres of land in Oldham county, and maintains a 12-room house upon it. He has two bank accounts in Kentucky, and only one in Florida, and his account at the First National Bank at Louisville is his main banking account. He has never voted in Florida. He has but one automobile in Florida, and has six in Kentucky, and has, during the years 1925, 1926, and 1927, spent more time in Kentucky than he has in Florida. We have often had this question of residence before us. See Robinson v. Paxton, 210 Ky. 575, 276 S. W. 500; City of Winchester v. Van Meter, 158 Ky. 31, 164 S. W. 323; Wallis v. Short, 193 Ky. 827, 237 S. W. 675; Hurst v. City of Flemingsburg, 172 Ky. 127, 188 S. W. 1085; Semple v. Commonwealth, 181 Ky. 675, 205 S. W. 789; Millett's Ex'r v. Commonwealth, 184 Ky. 193, 211 S. W. 562; Boyd's Ex'r v. Commonwealth, 149 Ky. 764, 149 S. W. 1022, 42 L. R. A. (N. S.) 580, Ann. Cas. 1914B, 481; Petitt's Ex'r v. City of Lexington, 193 Ky. 679, 237 S. W. 391; Saunders v. City of Flemingsburg, 163 Ky. 680, 174 S. W. 51; Green v. Moore, 206 Ky. 724, 268 S. W. 337; City of Covington v. Shinkle, 175 Ky. 530, 194 S. W. 766; City of Covington v. Wayne, 58 S. W. 776, 22 Ky. Law Rep. 826; Staiar's Adm'r v. Commonwealth, 194 Ky. 316, 239 S. W. 40, and other cases. A recent discussion of this question of residence will be found in Robinson v. Paxton, supra.

The rule regarding a man's residence is very well stated in this, which is taken from the Hurst case:

"The question of residence is one of fact and intention. Both must concur. But where a party has an actual residence in two different states and spends a substantial portion of his time in each, he may establish his residence in either state, and neither the fact that his dwelling house in the other state is more comfortable or better furnished, nor the fact that he spends the greater portion of his time there, will be conclusive on the question of residence."

To change his residence, a man must not only have the intention so to do, but must actually carry out that intention. A man does not change his residence by

merely going to another state, if he have the intention of returning to his former home. There must be both a removal to the new location and the intention to make that his home. No one can know a man's intention but himself, and statements relative to his intentions, it is argued, being in the nature of self-serving declarations, have no very great weight, but one's intention may be inferred from acts and conduct, and the acts and conduct of Ott in this case convince us that it was his intention to make Florida his home. Of course, he still has a home furnished in Kentucky; but one may have a home in two different places, though he cannot have two different residences. He must determine for himself which of these homes is his residence, and his acts and conduct are the best evidence of his selection. If we are not mistaken, the Chief Justice of the United States Supreme Court has a summer home at Murray Bay, in Canada, but that does not make him a Canadian. Ott has his church membership in Oldham county, but frequently men retain their church membership in churches after they have changed their residence, and the evidence shows that Ott retained his church membership in Pittsburgh for more than 12 years after he came to Kentucky. He and his mother together paid more than 75 per cent. of the construction cost of this church in Crestwood, and he and his mother have for some time contributed about that proportion to the cost of maintaining it. He explains his retention of membership in this church by saying that trustees had said to him that the withdrawal of his membership would seriously embarrass the church financially. The fact that he spent more time in Kentucky than in Florida, even without explanation of the happenings that caused him to do so, would not be sufficient, under the Hurst case, to show that he is a resident of this state.

The circuit found he was a resident of Florida, and its judgment is affirmed.