## Stell et al. v. Williams' Administrator et al.

(Decided February 28, 1930.)

442

E. H. GAITHER for appellants.

E. C. RANKIN, R. E. GRAVES and A. T. W. MANNING for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Dr. Owen Socrates Williams died intestate February 24, 1928, leaving an estate consisting of about $15,000 in personalty. The question presented by this appeal is whether at the time of his death his domicile was Florida or Kentucky. He left surviving him his widow, Cressa Williams, and four sisters, Mrs. D. M. Stell, Mrs. Frank Mansfield, Mrs. Maud Waller, and Mrs. Dollie McCraley. If his domicile was Florida, then under the laws of that state his entire estate passes to his widow, but, if his domicile was Kentucky, then one-half of his estate passes to his widow and the other one-half to his four sisters, who are his only heirs. The lower court adjudged that his domicile was Florida, and that his widow is entitled to his entire estate.

Dr. Williams was reared in Hustonville in Lincoln county, Ky. He was educated as a dentist and practiced his profession at Hustonville until about 1916 or 1917 when he moved to Harrodsburg, Ky., where he was

employed as a traveling salesman by an electrical manufacturing company. Shortly after moving to Harrodsburg he married Miss Cressa Hovey. They lived in Lexington, Ky., for a short time and then returned to Harrodsburg, where they rented an apartment and lived for about 18 months. At that time Mrs. Williams' mother and brother were living at Clearwater, Fla. In the autumn of 1919 or 1920 Dr. Williams, deciding to move to Florida, disposed of a portion of his household goods and shipped the remainder to Florida by freight. From that time until his death he spent most of the time in Florida. On several occasions he and his wife returned to Kentucky during the summer months. On these visits they spent most of the time in Harrodsburg where they were registered at a hotel. When he left Kentucky Dr. Williams owned some real estate at Hustonville, which he sold in August, 1927. At the time of his death he had no tangible property in this state, but he had a certificate of deposit for $500 in a bank at Harrodsburg and he owned a $1,000 note executed by a resident of Mercer county. He died in a hospital in Atlanta, Ga., where he had been taken following a stroke of paralysis. When he was taken ill his wife was in Arizona visiting a sick brother, but she was notified of her husband's illness and arrived at Atlanta about 24 hours before his death. She accompanied his body to Hustonville, Ky., and the day after the funeral she and Mrs. Stell went to the home of Mrs. Mansfield at Paris, Ky. Mrs. Stell and Mrs. Mansfield advised her that an administrator of her husband's estate should be appointed, and that they should secure a trust company to act in that capacity. They went to Lexington, Ky., and consulted the officials of the Security Trust Company, who agreed that the trust company should act as administrator. Accompanied by the secretary of the trust company, Mrs. Williams, Mrs. Stell, and Mrs. Mansfield went to Harrodsburg, Ky., and requested the county judge to appoint the Security Trust Company administrator of the estate of Dr. Williams. Mrs. Williams signed a paper which reads as follows: "I hereby decline to qualify as administrator of the estate of my late husband, Dr. O. S. Williams, and request you to appoint Security Trust Company, Lexington, Kentucky, as administrator. Respectfully, Mrs. O. S. Williams."

In August, 1928, the administrator brought an action in the Mercer circuit court for the settlement of the

estate and sought the advice of the court as to the disposition of the assets. The widow, Mrs. Cressa Williams, and the four sisters of Dr. Williams were made defendants. Mrs. Williams filed an answer which she made a cross-petition against her codefendants, in which she averred that Dr. Williams resided in Florida at the time of his death, and that under the laws of Florida she was entitled to the entire estate. She joined in the prayer for a settlement of the estate, but asked that the distribution be made under the laws of Florida. The administrator and appellants, the sisters of Dr. Williams, filed a reply in which they denied that Dr. Williams at the time of his death was a resident of Florida, and also alleged that Mrs. Williams, subsequent to her husband's death, stated that he was a resident of Kentucky and requested that an administrator be appointed in this state, and pleaded these facts in bar of her right to claim that her husband was a resident of Florida. In a rejoinder Mrs. Williams admitted that she signed the paper declining to qualify as administrator, but denied that she stated that the deceased was a resident of Kentucky.

A considerable amount of proof was taken, most of which was directed to the domicile of Dr. Williams at the time of his death, and, upon a submission of the case, it was adjudged that Dr. Williams died a resident of Florida, and that the estate must be administered under the laws of that state, and that the appellee Cressa Williams, widow of Dr. Williams, is entitled to the whole estate after the payment of debts and cost of administration.

A great number of witnesses residing at Harrodsburg, Hustonville, and at various points in Florida were introduced, who testified to conversations with Dr. Williams after he left Kentucky in 1919, in which he stated that his home was in Florida. For many years he was a member of the Masonic Lodge at Hustonville. He continued his membership there during the time he lived in Lexington and Harrodsburg, but after he moved to Florida he wrote the secretary of the lodge to the effect that he was a resident of Florida and requested a demit. He always registered at hotels from Clearwater or Dunedin, Fla. Soon after going to Florida he filed his affidavit that he was a resident of that state and secured a resident hunter's license. Several automobiles purchased by him after he left Kentucky carried Florida licenses. In

August, 1927, he sold his real estate at Hustonville and stated to a number of persons that he was selling it because he never expected to return to Kentucky. A number of other facts were proven which tended to show that he had become a resident of Florida.

The appellants introduced a few witnesses, most of whom are residents of Paris, Ky., who testified that they had heard Dr. Williams refer to Harrodsburg, Ky., as his home, or his old home, and that they had heard him say that he intended to purchase a Kentucky farm. However, the overwhelming weight of the evidence is to the effect that Dr. Williams had become a resident of the state of Florida.

The fact of actual residence, coupled with the intention of making it permanent, or presently fixed with only a floating intention of changing it, determines one's legal residence. See Robinson v. Paxton, 210 Ky. 575, 276 S. W. 500, where the question is discussed at some length, and Commonwealth v. Ott, 223 Ky. 612, 4 S. W. (2d) 417. When this rule is applied to the facts in this case, and due weight is given to the judgment of the chancellor, we are not prepared to disturb his finding that the decedent was a resident of Florida.

The decedent being a resident of Florida, it follows that the administrator appointed in Kentucky was an ancillary administrator, although no foreign domiciliary administrator had been appointed. While it appears that the Kentucky administrator collected assets in other states, the fact that these assets were turned over to it does not change the ancillary administration to a domiciliary one. Goodman's Adm'r v. First National Bank, 218 Ky. 229, 291 S. W. 54; Compton v. Borderland Coal Co., 179 Ky. 695, 201 S. W. 20, L. R. A. 1918D, 666.

> "The administration in each state is wholly independent, whether in the hands of the same or of different executors or administrators, in no wise impaired, abridged or affected by a previous, and a fortiori by a subsequent, grant of administration in another state." Woerner's American Law of Administration, vol. 1, sec. 158.

It is insisted, however, that the widow, Cressa Williams, by joining in a request for administration in Kentucky, is estopped from now asserting Florida as the

domicile. There is some proof that she stated, subsequent to her husband's death, that he was a resident of Kentucky, and that she made such a statement to the county judge of Mercer county before an administrator was appointed. She denied she made such a statement, but, whether or not she did, we deem immaterial, since nothing she might have said could have changed the domicile. In order to sustain their plea of estoppel, it was necessary for appellants to show that they had relied upon statements or conduct of the widow and were thereby induced to do something to their prejudice. The person setting up the estoppel must have been induced to alter his position in such a way that he will be injured if the person sought to be estopped is not held to the representations on which the estoppel is predicated. Hodge Tobacco Co. v. Sexton, 166 Ky. 219, 179 S. W. 36; Bush v. Chenault's Executor, 175 Ky. 598, 194 S. W. 777; City of Covington v. Patterson, 191 Ky. 370, 230 S. W. 542. Appellants have failed to show that they have altered their positions or have been prejudiced by reason of the acts and statements relied upon by them as constituting an estoppel.

The administrator sold to Mrs. Stell, one of the appellants, an automobile belonging to the decedent's estate for $800 and took a receipt for that amount to be credited on her part of the estate. The administrator might complain if it had been misled by any acts or statements of Mrs. Williams, but the court gave judgment in favor of Mrs. Williams against Mrs. Stell for $800, and thus protected the administrator. Mrs. Stell cannot complain, since she is indebted to the estate in the sum of $800.

It is also argued that the order of the Mercer county court appointing the administrator amounted to a judgment that the domicile was Kentucky, and that this proceeding is a collateral attack on that judgment. In Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, 114, L. R. A. 1917C, 171, Baker owned property in Tennessee and in Kentucky. His widow, claiming that he was a resident of Tennessee, was appointed administratrix in the county in Tennessee where his land was situated. The order recited that he was a resident of that state. His mother was appointed and qualified as the administratrix in Kentucky in the county where personalty owned by the decedent was situated, and, in holding that

the order of the Tennessee court was not an adjudication that Baker was domiciled there, this court said:

"But it is one thing to grant letters of administration and another very different thing to determine the place of the intestate's residence for the purpose of affecting the devolution of his estate. The granting of letters of administration alone would not in any manner affect the devolution of his estate or determine the distributees or the shares to which they were entitled. The administrator would merely hold the estate in trust for the benefit of the persons entitled to the estate, with the duty of turning the estate over to such persons when their right was established and in the time and manner provided by the Tennessee law. So that the mother of Charles Baker could not and does not complain of so much of the Tennessee county court judgment as granted letters of administration upon his estate."

In the instant case the county court of Mercer county had jurisdiction to grant letters of administration of Dr. Williams' estate, since, at the time of his death, there were debts and demands owing to him in that county. Kentucky Statutes, secs. 3894, 3898, 3899, and 4849; Baker v. Baker, Eccles & Co., supra; Barrett v. Barrett's Adm'r, 170 Ky. 91, 185 S. W. 499. Since, as we have seen, Dr. Williams was at the time of his death a resident of Florida, the lower court properly adjudged that the estate must be distributed according to the laws of that state, and, this being true, it is conceded that the widow is entitled to the whole estate.

The lower court adjudged that the costs should be paid out of the estate. From this part of the judgment the widow has taken a cross-appeal on the theory that she is entitled to recover from appellants her costs arising out of the litigation between them. A considerable portion of the cost was incurred by the parties in determining the issue as to the place of the decedent's residence. However, so long as this question was in dispute, the administrator could not make a settlement of the estate and it was necessary to determine this question before a settlement could be made. The question was necessarily involved in the settlement suit, and the court properly adjudged that these costs should be paid out of the estate.

Wherefore the judgment is affirmed both on the original and the cross appeal.