## Nunn et al. v. Hamilton.

(Decided March 28, 1930.)

664

A. J. THOMPSON and WOODWARD, HAMILTON & HOBSON for appellants.

JOHN E. RICHARDSON, J. W. KINNIARD, V. H. BAIRD, M. O. SCOTT and R. H. CROCKETT for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

James A. Hamilton, Sr., died March 26, 1929, a resident of Metcalfe county, Ky., and on April 22, 1929, his will was proven and admitted to record in the Metcalfe county court. The beneficiaries named in the will were his four children, the appellants, Mrs. Mary Nunn, Mrs. Nora Thompson, and Mrs. Ethel Davis, and the appellee, James A. Hamilton, Jr. The testator left an estate worth approximately $200,000. By the will James A. Hamilton, Jr., and Mrs. Mary Nunn were named executors. On the day the will was probated the appellee appeared in open court and moved that he be appointed executor with the appellant Mrs. Mary Nunn, but the court refused to appoint him on the ground that he was a nonresident of the state of Kentucky, and, Mrs. Nunn

having declined to serve as executrix, the court appointed the appellants, Mrs. Mary Nunn, and Mrs. Nora Thompson, and Mrs. Ethel Davis, as administratrices with the well annexed of the estate of James A. Hamilton, Sr., deceased.

The appellee appealed from the order to the Metcalfe circuit court, and that court entered a judgment reversing the judgment of the county court and directing that the appellant Mrs. Mary Nunn, and the appellee, James A. Hamilton, Jr., be permitted to qualify as executors of the will of James A. Hamilton, Sr., by executing the proper bond. From this judgment Mrs. Nunn, Mrs. Thompson, and Mrs. Davis have appealed, and the appellee, James A. Hamilton, Jr., has taken a cross-appeal from so much of the judgment as permitted Mrs. Nunn to qualify as coexecutor.

Prior to 1910 the appellee, James A. Hamilton, Jr., resided at his father's home in Metcalfe county. In 1910 he married, and he and his wife continued to reside in Metcalfe county until 1919 when they moved to Warren county, where he bought a home and resided until 1922, when he sold all his property in Kentucky and purchased a farm in Tennessee to which he moved in the early part of 1923. In August, 1928, James A. Hamilton, Sr., suffered a stroke of paralysis, and from that time until his death on March 26, 1929, appellee spent most of the time at his father's home.

On April 22, 1929, when the will was probated, the appellee, in support of his motion to be permitted to qualify as executor of his father's will, filed the following affidavit:

"The affiant, J. A. Hamilton, Jr., states that he is now and has been all of his life an actual and bona fide resident of Metcalfe County, Kentucky. He states that while it is a fact that he has owned property in other parts of the country, yet he has never voted at any other place than in Metcalfe County, Kentucky, except in Warren County, Kentucky and that he has always considered Metcalfe County, Kentucky, as his home and his actual place of residence; that he has been temporarily absent from Metcalfe County, Kentucky, yet Metcalfe County Kentucky, has always been his home, and his actual place of residence, and it is now his actual place of

residence and expects to continue to make this state his residence.

"J. A. Hamilton, Jr."

As heretofore stated, the county court declined to permit the appellee to qualify upon the ground that he was a nonresident of Kentucky. In reversing the judgment of the county court the chancellor, Hon. H. L. James, who acted as special judge in the absence of the regular judge who was disqualified to sit in the case, in a well-reasoned opinion, said in part:

"The main question presented, is whether or not a non-resident, under the circumstances of this case, may qualify as an executor. The will of the testator is supreme, and a Court is without authority to refuse appointment to the executor named by the will unless required so to do by the law or some prevailing rule of public policy. Berry v. Hamilton, 12 B. Mon. 191, 54 Am. Dec. 515; Holbrook v. Head, 6 S. W. 592, 9 Ky. Law Rep. 755; Worthington v. Worthington, 35 S. W. 113, 18 Ky. Law Rep. 62; Adams v. Readnour, 134, Ky. 230, 120 S. W. 279, 20 Ann. Cas. 833; 11 R. C. L. pages 31 to 43; Gatto v. Gatto, 198 Ky. 569, 250 S. W. 833.

"To ascertain the prevailing rule of public policy, we must look to the Constitution, Statutes and decisions of our court of last resort. Westerfield-Bonte Co. v. Burnett, 176 Ky. 188, 195 S. W. 477; Eversole v. Eversole, 169 Ky. 796, 185 S. W. 487, L. R. A. 1916E 593.

"The Constitution is silent on the subject, and the only Statute which may directly affect the question is Section 3846 of the Kentucky Statutes. This Section provides:

" 'If a personal representative shall reside out of the state . . . the county court shall remove him.'

"Section 449 provides that the term personal representative, shall be construed to include executor and administrator. Section 460 provides that the rule of the common law, requiring the statutes in derogation thereof are to be strictly construed, shall not apply to this revision. This section (3846) in different form, first appeared in the Revised Statutes adopted in 1852 (c. 37, art. 1, sec. 19) and was taken from a Masschusetts revision. Then it was as follows:

" 'When any personal representative shall reside out of the state, or become insane, or shall after his qualification, become otherwise incapable to discharge his trust, the county court may, after citation, remove him.'

"By an Act of January 29, 1863, that section was so amended as to include a guardian and to provide that if such personal representative or guardian be a non-resident of Kentucky, he might be brought before the Court by warning order. The section was carried into the General Statutes practically in its present form.

"It will be noted that this section does not expressly forbid the appointment of a non-resident either as executor or administrator, and it may be said, that had the Legislature, when it adopted the Revised Statutes or the General Statutes or the Kentucky Statutes, intended that a person who had his legal residence in another state should under no circumstances be appointed by the Court as a personal representative, it could easily have said so. In Radford v. Radford, 5 Dana, 156, decided in 1837, where the County Court had refused to appoint as administratrix the widow who was a non-resident, the Court said:

" 'And certainly her non-residence was a sufficient objection to her. She may never become a resident of this State; and a Court of Kentucky may refuse to appoint a non-resident of this State the personal representative of a person who was domiciled here at the time of his death, and should, in fact, generally do so.'

"In Young's Adm'r v. L. & N. R. R. Co., 121 Ky. 483, 89 S. W. 475, 28 Ky. Law Rep. 451, and Spayd's Adm'r v. Brown, 102 S. W. 823, 31 Ky. Law Rep. 438, the Court indicated that a non-resident could not be appointed as administrator but in neither case was the question directly involved. However, in Fishel v. Dixon, 212 Ky. 2, 278 S. W. 545, 546, this was the single question presented, and the Court said:

" ' "Can a nonresident of the state be appointed administrator of the estate of a decedent situated in Kentucky?" The answer is: "No." ' "

"The opinion cited the statute as an 'implied prohibition' and the cases referred to above, together with Moran v. Moran's Adm'r, 172 Ky. 343, 189 S. W. 248, as the authority for its answer. In Moran v. Moran, the question did not arise and was only incidentally referred to.

"We have been cited to no opinion from our Court of last resort and have found none, holding that a non-resident of the state, named by a resident testator, may not act as executor. In sister states where there is no express legislative prohibition, it is generally held that a non-resident may be so appointed. 11 R. C. L. 45; 23 Corpus Juris, 1025, and cases cited.

"However, the opinion in the case of Fishel v. Dixon, is sufficient to show, and does show, that the prevailing rule of public policy in this state forbids the appointment of a non-resident as an administrator. Such a 'non-resident' is one who has his legal residence out of the state, and are we to conclude from this that the same rule applied to the appointment of a non-resident as executor? Are there any reasons why it should not be the same?

"The law of wills is of ancient origin. The right to dispose of property by will was exercised by the Anglo-Saxon. After the conquest, disposition, because of the feudal system, was limited to personal property, but by the Statute of Wills, 32 and 34 Henry VIII, the right to dispose of two thirds of his real property was conferred on one qualified to make a will. In early times wills were established in the ecclesiastical courts; later probate courts were provided, and it was the duty of the named executor to establish the will. All persons capable of making wills and some others were capable of being made executors. An alien, an infant, or a married woman could be appointed, but the infant could not act until he reached his majority, and the consent of the husband was necessary for a married woman to accept the appointment. Williams on Executors, pages 228 to 239. The designation as executor was a part of the will and when the will was established nothing more was necessary to be done to enable the executor to act.

"An administrator, as we understand the term, was unknown to the English common law and if a citizen died intestate his goods were seized by the King and disposed of by ministers for the payment of debts, etc. The Statute of 31 Edw. III, S. 1, C. 11, provided:

" 'In case where a man dieth intestate, the ordinaries shall depute of the next and most lawful friends of the dead person intestate to administer his goods; which persons so deputed shall have action to demand and recover, as executors, the debts due to the said deceased intestate, in the King's Court to administer and dispend for the soul of the dead; and shall answer also in the King's Court, to others to whom the said deceased was holden and bound, in the same manner as executors shall answer. And they shall be accountable to the ordinaries as executors be in the case of testament, as well as of the time past as the time to come.' See Williams on Executors, 401 to 404.

"The common law of this state embraces the English statutes and common law relative to wills and our statutes on the subject, with very few exceptions are but declaratory of the common law. At common law an executor derived his appointment from the will, and administrator from the Court, and this distinction is recognized in Kentucky. Berry v. Hamilton, 12 B. Mon. 191, 54 Am. Dec. 515; Holbrook v. Head, 6 S. W. 592, 9 Ky. Law Rep. 756; Worthington v. Worthington, 35 S. W. 113, 18 Ky. Law Rep. 64; Adams v. Readnour, 134 Ky. 230, 120 S. W. 279, 20 Ann. Cas. 833.

"An administrator deals only with the personal estate of a decedent; an executor may have the disposition of both the real and personal estate.

"The duties of an administrator are prescribed by law; the duties of an executor are in a large measure prescribed by the will of the decedent.

"An administrator is selected by a Court under authority derived from the state; an executor is selected by the testator.

"In Hill v. Tucker, 13 How. 458, 466, 14 L. Ed. 223, the Supreme Court of the United States, in pointing out the difference between 'one called upon

to administer the estate of an intestate and one appointed to the office of executor by a testator' said:

" 'The responsibilities of both as to the manner of settling the estate which they represent depend upon the law of the State; but the relation between executor and testator is altogether different. The executor's interest in the testator's estate is what the testator gives him. That of an administrator is only that which the law of his appointment enjoins. The testator may make the trust absolute or qualified in respect to his estate. It may be qualified as to the subject-matter, the place where the trust shall be discharged, and the time when the executor shall begin and continue to act as such. He may be executor for one of several purposes—for a part of the effects in possession of the testator at the time of his death, or for such as may be in action, if it be only for a debt due. But though the executor's trust or appointment may be limited, or though there are several executors in different jurisdictions, and some of them limited executors, they are, as to the creditors of the testators, executors in privity, bearing to the creditors the same responsibilities as if there was only one executor. The privity arises from their obligations to pay the testator's debts, wherever his effects may be, just as his obligation was to pay them. The executor's interest in the testator's estate is derived from the will, and vests from the latter's death, whatever may be the form which the law requires to be observed before an executor enters upon the discharge of his functions. When within the same political jurisdiction, however many executors the testator may appoint, all of them may be sued as one executor for the debts of the testator, and they may unite in a suit to recover debts due to their testator, or to recover property out of possession.

" 'All of them, then, having the same privity with each other and to the testator, and the same responsibility to creditors, though they may have been qualified as executors in different sovereignities, an action for a debt due by the testator, against any one of them in that sovereignty where he undertook to act as executor, places all of them in one relation concerning it, and as to the remedies for its recovery; what one may plead to bar a recovery,

another may plead; and that which will not bar a recovery against any of them, applies to all of them. Between administrators deriving their commissions to act from different political jurisdictions, there is no such privity.'

"Courts are loathe to disregard the *expressed intention* of a testator and in construing wills adhere to the doctrine that it is 'the polar star for their guidance.' Jones v. Jones, 198 Ky. 756, 250 S. W. 92; State Bank v. Rose, 219 Ky. 563, 293 S. W. 1087.

"We find nothing in the Constitution, Statutes or opinions of the Court of last resort, indicating a public policy forbidding in all cases the appointment of a non-resident to act as the executor of a resident testator, although Section 3846 of the Statutes requires that if he, after accepting the office, resides out of the state he shall be removed.

"4. The evidence shows that after his father was paralyzed in September, 1928, J. A. Hamilton, Jr., spent much of his time with the father and was in Kentucky when he died. Mr. Hamilton then returned to Tennessee but came back to Kentucky a few days before the will was offered for probate and was present in Court on that day. He filed his affidavit stating that he had always been, was then and expected to remain a resident of Kentucky.

"Determining the legal residence of a citizen is often a difficult matter, even with lawyers. The rulings of the Court of last resort are not uniform as is pointed out in Boyd v. Commonwealth, 149 Ky. 764, 149 S. W. 1022, 42 L. R. A. (N. S.) 580, Ann. Cas. 1914B, 481. The attorneys for appellant are still contending that he was a legal resident of Kentucky. But at the time he made application to be permitted to qualify—although his intention was to establish a domicile in the state—he had not taken up an actual abode at a place selected as his new domicile, and for this reason is deemed a legal resident of Tennessee. His right to qualify was denied on this highly technical theory. Doubtless had he thought it necessary so to do, he would have acquired the residence before the application was made. Anyhow to refuse his application would be to thwart the intention of the testator on a technicality."

Section 3846 of the Statutes does not specifically prohibit the appointment of a nonresident as executor, but provides that, if a personal representative shall reside out of the state, the county court shall remove him. In Fishel's Adm'x v. Dixon, 212 Ky. 2, 278 S. W. 545, it was held that a nonresident of the state cannot be appointed the administrator of the estate of a decedent situated in Kentucky. The decision in that case was bottomed on section 3846, and, in construing that section it was said that an implied prohibition against the appointment of a nonresident is found in the statutory provision that, if an administrator moves out of the state, his letters shall be revoked. The interpretation placed on the statute in the Fishel case is a reasonable one under the facts of that case. Fishel was admittedly a nonresident and sought to be appointed administrator of the decedent's estate located in this state. As pointed out in the chancellor's opinion, there is a wide difference between administrators and executors, and, in view of the well-settled principle that the testator's wishes should be heeded, an executor deserves greater consideration when his right to qualify is contested. A testator has the right to appoint any one whom he deems proper as executor of his will, and his solemn selection is not lightly to be disregarded. The courts will not add disqualifications to those specified by the statute nor disregard the testator's solemnly expressed wishes by too liberal an interpretation of the statutory disqualifications.

In the instant case James A. Hamilton, Jr., was the only son of the testator and had been nominated in the will as one of the executors. On the day the will was offered for probate he was present declaring himself to be an actual and legal resident of this state and expressing his intention of so remaining. Legal residence consists of actual residence at a place, coupled with intent to remain at such place. In Boyd's Executor v. Commonwealth, 149 Ky. 764, 149 S. W. 1022, 1024, 40 L. R. A. (N. S.) 580, Ann. Cas. 1914B, 481, it was said that intent to change one's legal residence must, in order to make it effectual, be executed. In the course of the opinion it was said: "The character of residence and the time it is occupied are unimportant; but there must be an actual occupancy of the residence chosen for some time, however short, in order that the change of resi-

dence may become effective.'' Cf. Commonwealth v. Ott. 223 Ky. 612, 4 S. W. (2d) 417. But in view of the principle that the testator's wishes are paramount unless clearly in contravention of settled rules of public policy, or statutory provisions, the rules for the determination of residence should be even more liberally applied in the case of one nominated in a will as executor than in other cases such as those involving questions of taxation. In other words all doubts should be resolved in favor of the one nominated in the will and the wishes of the testator effectuated. Here the appellee was in Kentucky at the time he requested to be permitted to qualify as executor and had been in the state for several days and asserted that he intended to remain. Under this state of facts the county court should have permitted him to qualify as executor. If he later moved from the state, the court would then be authorized to remove him under section 3846 of the Statutes.

Appellee insists that Mrs. Mary Nunn, having declined to qualify as executrix when the will was probated, cannot retract her renunciation in order to qualify with the appellee as executrix of her father's will. An executor nominated in the will, who has renounced, may retract his renunciation and assume the office at any time before the grant of letters of administration with the will annexed. Taylor v. Tibbatts, 13 B. Mon. 177; Schuler on Wills, Executors and Administrators, vol. 3, secs. 1547, 1548; Woerner's American Law of Administration (2d Ed.) sec. 234. Since, as we have seen, the county court erred in refusing to permit the appellee to qualify as executor, the appointment of the appellants as administratrices with the will annexed was unauthorized, and Mrs. Nunn therefore could retract her renunciation.

Wherefore the judgment is affirmed both on the original and cross appeals.

The whole court sitting.